UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON HERMAN,
WILLIAM COHEN,
JOEY KRATT, and
CHRISTINA LANCASTER,
as *individuals*
*and on behalf of those*
*similarly situated*,

  Plaintiffs,     CASE NO. 8:14-cv-03028-MSS-EAJ

vs.           Jury Trial Demanded

SEAWORLD PARKS &
ENTERTAINMENT, INC.,   CLASS ACTION

  Defendant.
_____/

## SECOND AMENDED CLASS COMPLAINT

Plaintiffs, Jason Herman ("Herman"), William Cohen ("Cohen"), Joey Kratt ("Kratt"), and Christina Lancaster ("Lancaster"), by and through the undersigned counsel and on their behalf and on behalf of those similarly situated ("the Class"), hereby file the following Second Amended Class Complaint against Defendant, Seaworld Parks & Entertainment, Inc. ("Defendant"), and allege as follows.

  1.  This is an action for damages for breach of contract, and violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), arising from the sale of a one-year pass to the Defendant's theme parks.

### PARTIES

  2.  Herman is an individual residing in Pinellas County, Florida.

  3.  Cohen is an individual residing in Hernando County, Florida.

4. Kratt is an individual residing in Orange County, Florida.

5. Lancaster is an individual residing in Chesterfield, Virginia.

6. Defendant is a Delaware Corporation with its principal place of business in Orlando, Florida. Defendant owns 11 destination and regional theme parks in the United States, including SeaWorld Orlando, SeaWorld San Antonio, SeaWorld San Diego, Busch Gardens Tampa, Busch Gardens Williamsburg, Aquatica Orlando, Aquatica San Diego, Discovery Cove, Water Country USA, and Adventure Island.

7. During the year ended December 31, 2013, Defendant has publicly reported that in 2013 alone it hosted approximately 23.4 million guests in Defendant's theme parks with revenues of approximately $1,460,300,000. For the year ended December 31, 2013, theme park admissions accounted for approximately 63% of Defendant's total revenue. Approximately 30% of Defendant's admission ticket purchases are made online. *See* Seaworld Entertainment, 2013, Annual Report.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action under 15 U.S.C. § 1693m(g) (EFTA) and 28 U.S.C. § 1331 (federal question). The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. This Court also has jurisdiction over the action under 28 U.S.C. § 1332. The aggregated claims of the individual members of the proposed Class exceed the sum or value of $5,000,000, exclusive of costs and interest, and this is a Class action in which some of the members of the Class are citizens of a state different than the Defendant.

10. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this district.

## DEFENDANT'S SYSTEMATIC PRACTICE
## OF IMPROPER AUTOMATIC RENEWAL OF THEIR CONTRACTS

11. Defendant offers consumers who wish to purchase one-year passes to any of its parks an option to pay for the passes through Defendant's "EZ Pay" system – a system which allows consumers to pay for their passes in twelve installments. Each consumer that utilizes Defendant's "EZ Pay" system is bound by Defendant's EZ Pay Plan.

12. Defendant automatically debits each installment from the consumer's debit or credit card account. The consumer's initial "EZ Pay" payment is made on the date that the consumer enters into the uniform contract for the one-year pass. Thereafter, Defendant debits eleven subsequent payments on a monthly basis from the consumer's debit or credit account. The uniform contract expressly states that the agreement is for "[u]nlimited admission" to Defendant's theme park "for 1 Year." The "TOTAL NUMBER OF PAYMENTS under the uniform contract (including down payment)" is "12." Due to the foregoing "EZ Pay" payment structure, the consumer's one-year pass is fully paid in eleven months. Defendant's uniform contract provides, in relevant part:

> **EXCEPT FOR ANY PASSES PAID IN LESS THAN 12 MONTHS, THIS CONTRACT WILL RENEW AUTOMATICALL ON A MONTH-TO-MONTH BASIS FOLLOWING THE PAYMENT PERIOD** until I [the consumer] terminate it.

13. Accordingly, pursuant to Defendant's uniform contract, Defendant is authorized to renew the parties' agreement and continue to debit the consumer's account on a month-to-month basis after the one year period has expired unless the consumer makes all twelve required payments (including the down payment) in less than twelve months. The clear corollary to this contract language is that Defendant is not permitted to automatically renew accounts that are paid in less than twelve months. Despite the foregoing uniform contract language, Defendant

systematically renews its contracts for those consumers that make all twelve payments in less than twelve months. As a result, Defendant takes more payments from its customers beyond the contracted for amount.

## GENERAL ALLEGATIONS

### A. Plaintiff Jason Herman

14. On March 18, 2013, Herman purchased from Defendant two "1 Year Seaworld Orlando and Busch Gardens Tampa Pass EZpay Adult." A copy of the "Order Details" confirming this purchase is attached as **Exhibit 1.**

15. As described in the "Order Details" generated by Defendant, the one-year pass was purchased for an initial payment on March 18, 2013 in the amount of $35.40, "plus 11 additional monthly payments of $35.40 (with tax)."

16. Starting on April 18, 2013, Defendant proceeded to charge Herman's credit card $35.40 and continued to charge it on the 18th of every month through February 18, 2014, when the eleventh additional monthly payment was made.

17. Despite receiving the full payment called for in the "Order Details," Defendant continued to charge Herman's credit card each month, with the last charge taken on September 28, 2014.

18. On October 15, 2014, in a call made at 8:43 a.m. and lasting 16 minutes, Herman contacted Defendant at the number listed in the "Contact Us" portion of Defendant's website.

19. During the call, Herman was directed to the "EZpay Department" and spoke with an agent or employee of Defendant, who identified herself as Deborah (she refused to provide her last name).

20. Herman explained to Deborah that he had purchased his pass on March 18, 2013, but that he had been charged for several months after the pass had expired. Herman requested a refund for any charges made beyond February 18, 2014.

21. Deborah told Herman that the terms of the contract he agreed to by purchasing the one year pass included an automatic renewal and that his credit card was charged because he did not ask Defendant to terminate his pass. She refused his request for a refund.

22. Herman asked where the contract language could be found, and Deborah advised that it was in the initial e-mail receipt from the ticket purchase. Herman searched his e-mail while on the phone with Deborah and found no such contract language. Similarly, no such language was found on the receipt, the e-mailed tickets, or the physical pass.

23. Deborah insisted that Herman should have read the contract at the time of purchase and read him the terms of the contract, which according to Defendant included the following provision: "EXCEPT FOR ANY PASSES PAID IN LESS THAN 12 MONTHS, THIS CONTRACT WILL RENEW AUTOMATICALLY ON A MONTH-TO-MONTH BASIS FOLLOWING THE PAYMENT PERIOD until I terminate it."

24. Given the lack of any such language in the confirming e-mails, receipts, tickets or passes, Herman asked Deborah if the contract language that she read to him may have changed since he purchased the ticket. She advised that the renewal language had been the same for the six years that she worked for the Defendant and that the Defendant would not give refunds.

25. Later that day, at 2:38 p.m., Herman called Defendant again to obtain a copy of the contract language that had been described by Deborah.

26. In the second call, which lasted 21 minutes, Herman spoke with a different representative of Defendant named Jasmine. Jasmine attempted to forward a copy of the

contract language to Herman, but could not do so. She also attempted to guide Herman through numerous steps in an attempt to access the contract language online. Eventually, Herman ended the call with Defendant without obtaining a copy of the contract.

27. Finally, after the call, Herman was able access the contract only through following a series of internet links starting in an e-mail from Defendant dated April 13, 2012. A copy of the Defendant's form contract is attached as **Exhibit 2**.

28. Based on his call with Defendant's agent, Deborah, Defendant, as its general business practice, relies on the following contractual provision to continue charging customers after time set forth in the purchase confirmation and to refuse those customers refunds when they request them: "*EXCEPT FOR ANY PASSES PAID IN LESS THAN 12 MONTHS*, THIS CONTRACT WILL RENEW AUTOMATICALLY ON A MONTH-TO-MONTH BASIS FOLLOWING THE PAYMENT PERIOD until I terminate it." (Emphasis added).

29. Per the language of Defendant's contract, Defendant is only authorized to automatically renew and continue charging for passes that are not "paid in less than 12 months."

30. Here, Herman purchased the pass on March 18, 2013 and then made eleven subsequent payments, with the eleventh subsequent payment falling on February 18, 2014. The February 18, 2014 payment marked the date on which the pass was paid in full based on both the number of additional monthly payments and based on the total amount paid ($424.80). In other words, the pass was fully paid within eleven months (March 18, 2013 to February 18, 2014).

31. Because Herman paid for his passes in less than 12 months, Defendant did not possess the contractual right to renew the contract nor was Defendant authorized to charge Herman's credit card after February 18, 2014.

32. Defendant breached its contract with Herman by continuing to charge him after the February 18, 2014 payment, when Defendant had no contractual right nor authorization to do so.

33. Upon information and belief, it is Defendant's policy and practice to charge its customers in advance for its one-year passes such that all one-year passes are paid in full within only eleven months.

### B. **Plaintiff William Cohen**

34. On March 16, 2013, Cohen purchased from Defendant two "1 Year Seaworld Orlando and Busch Gardens Tampa Pass EZpay Adult." Aside from the purchase date, Cohen's form contract with the Defendant had the same terms and conditions as the contract between Herman and Defendant.

35. Cohen's one-year pass was purchased for an initial payment on March 16, 2013 in the amount of $35.40, "plus 11 additional monthly payments of $35.40 (with tax)."

36. Starting on April 16, 2013, Defendant proceeded to charge Cohen's credit card $35.40 and continued to charge it on the 16th of every month through February 16, 2014, when the eleventh additional monthly payment was made.

37. Despite receiving the full payment called for, Defendant continued to charge Cohen's credit card each month, with the last charge taken on November 16, 2014.

38. On December 9, 2014, Cohen's wife contacted Seaworld and asked why her husband's credit card continued to be charged $35.40 per month. She explained to the Seaworld customer service representative that they thought the 1-year pass had expired. The customer service representative informed her that the contract had automatically renewed, but that he would cancel the renewal.

39. Cohen purchased the pass on March 16, 2013 and then made eleven subsequent payments, with the eleventh subsequent payment falling on February 16, 2014. The February 16, 2014 payment marked the date on which the pass was paid in full based on both the number of additional monthly payments and based on the total amount paid ($424.80). In other words, Cohen's pass was fully paid within eleven months (March 16, 2013 to February 16, 2014).

40. Because Cohen paid for his passes in less than 12 months, Defendant did not possess the contractual right to renew the contract nor was Defendant authorized to charge Cohen's credit card after February 16, 2014.

C. **Plaintiff Joey Kratt**

41. On January 22, 2013, Kratt purchased from Defendant one "1 Year Busch Gardens Tampa Pass EZpay Adult." Kratt's one-year pass was purchased for an initial payment on January 22, 2013 in the amount of $13.28, "plus 11 additional monthly payments of $13.28." Aside from the payment amount and purchase date, Kratt's form contract with Defendant had the same terms and conditions as the contract between Herman and Defendant.

42. Starting on February 20, 2013, Defendant proceeded to charge Kratt's debit card from his Bank of America checking account $13.28 and continued to charge it on the 20th of every month through December 20, 2013, when the eleventh additional monthly payment was made.

43. Despite receiving the full payment called for, Defendant continued to charge Kratt's debit card each month, with the first unauthorized recurring charge taking place on January 21, 2014 and the last unauthorized recurring charge taken on August 20, 2014.

44. In or around September, 2014, Kratt called Defendant and spoke with a customer service representative. During the call, Kratt explained that he had purchased his pass on

January 22, 2013, but that he had been charged for several months after the pass had expired. Plaintiff requested a refund for any charges made beyond December 20, 2013.

45. Defendant's customer service representative informed Kratt that all she could refund him was the amount of $39.84 which equated to 3 of the 8 unauthorized payments deducted from Kratt's checking account. However, the Defendant refused to refund Kratt the additional 5 months that Defendant improperly charged him following the contract's expiration.

46. Defendant requires that monthly payments be paid by Electronic Fund Transfers ("EFTs"). Defendant requires that monthly dues be paid by EFT because the process provides Defendant the ability to take money from consumers' accounts, without the consumers' active participation in effectuating the payments. This mechanism is central to Defendant's scheme to maximize profits by taking EFTs after the consumer has paid the annual pass in less than 12 months. If Defendant permitted monthly payments to be paid by cash or check, Defendant would have no vehicle by which it could force further payments after the contract had expired.

47. After Kratt's 12th payment was made on December 20, 2013, Defendant had no contractual right to renew the contract nor was Defendant authorized to charge Kratt's debit card after December 20, 2013. Yet, Defendant subsequently made unauthorized EFTs against Kratt's bank account on January 21, 2014 in the amount of $13.28, and which funds were transferred from the financial institution, Bank of America, to Defendant. Defendant continued to make unauthorized EFTs against Kratt's bank account on the 20th day of every month through August 20, 2014.

48. Kratt has not received a full refund for the unauthorized EFT charges billed to his debit card account. Thus, Kratt has not been placed in the position he was in before Defendant, without valid authorization, assessed EFT charges against his debit card.

### D. Christina Lancaster

49. On October 16, 2012, Lancaster purchased from Defendant three "1 Park, One Year EZpay pass – Busch Gardens Williamsburg." Aside from the purchase date and park, Lancaster's form contract with the Defendant had the same terms and conditions as the contract between Herman and Defendant.

50. Lancaster's one-year pass was purchased on October 16, 2012, and the initial payment was processed on October 18, 2012 in the amount of $29.97, "plus 11 additional monthly payments of $29.97 (with tax)."

51. Starting on October 18, 2012, Defendant proceeded to charge Lancaster's debit card from her Wells Fargo checking account in the amount of $29.97 and continued to charge it every month through September 18, 2013, when the eleventh additional monthly payment was made.

52. Despite receiving the full payment called for, Defendant continued to charge Lancaster's debit card each month, with the last charge taken on September 18, 2015.

53. On September 18, 2015, Lancaster contacted Defendant and asked for a full refund of all payments taken from her checking account since her twelfth and final payment was made within the initial one year EZ Pay contractual term, i.e., September 18, 2013. The Defendant's customer service representative refused to provide Lancaster with a full refund.

54. Lancaster purchased the pass and the initial payment was debited from her checking account on October 18, 2012, and then Lancaster made eleven subsequent payments, with the eleventh subsequent payment falling on September 18, 2013. The September 18, 2013 payment marked the date on which the pass was paid in full based on both the number of

additional monthly payments and based on the total amount paid. In other words, Lancaster's pass was fully paid within eleven months (October 18, 2012 to September 18, 2013).

55. Because Lancaster paid for her passes in less than 12 months, Defendant did not possess the contractual right to renew the contract nor was Defendant authorized to charge Lancaster's debit card after September 18, 2013.

## CLASS ALLEGATIONS

56. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

57. Plaintiffs propose two classes defined as follows:

### THE CLASS

    a. All natural persons in the States of Florida, Texas, Virginia, and California;
    b. within the applicable statute of limitations in their respective states;
    c. who purchased a one-year pass to one of Defendant's theme parks in their respective states;
    d. who funded the one-year pass through Defendant's "EZ Pay" system;
    e. who paid for their one-year pass in less than 12 months; and
    f. who were charged any additional amounts after the one-year pass was paid in full.

### ELECTRONIC FUNDS TRANSFER CLASS ("EFTA SUBCLASS")

    a. All natural persons in the States of Florida, California, Virginia and Texas;
    b. who purchased a one-year pass to one of Defendant's theme parks in their respective states, and who funded the one-year pass through Defendant's "EZ Pay" system using a debit card;
    c. who paid for their one-year pass in less than 12 months;
    d. who were charged through an electronic fund transfer to their debit or bank account any additional amounts after the one-year pass was paid in full; and
    e. such charges were made on or after the date one year prior to the filing of this action.

58. Excluded from the Class and Subclass are all persons that received full refunds from Defendant after being charged any additional amounts after the one-year pass was paid in

full; all persons who continued to use their pass after the one-year pass had expired; managers, directors and employees of Defendant and members of their immediate families; all agents of Defendant; legal counsel for both sides and members of their immediate families; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

59.  The members of the Class and Subclass are so numerous that joinder is impractical. The Class and Subclass consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendant's records.

60.  The claim of the representative Plaintiffs, Herman, Cohen, Kratt, and Lancaster, are typical of the claims of the Class in that the representative Plaintiffs, like the Class members, purchased a 1 year annual pass with Defendant, paid for said pass in less than 12 months, and were charged an automatic renewal fee when, per the contract terms, the Defendant did not possess the contractual right to renew the contract and/or charge any additional amount after the pass was paid in full. The representative Plaintiffs, like all Class members, have been damaged by Defendant's misconduct in that they have been charged additional payments when the Defendant did not have the contractual right to do so.

61.  The claim of the representative Plaintiff, Kratt, is typical of the claims of the EFTA Subclass in that the representative Plaintiff, like the EFTA Subclass Members, purchased a 1 year annual pass with Defendant and funded the one-year pass through Defendant's EZ Pay system using a debit card, paid for said pass in less than 12 months, and was charged through an electronic funds transfer to their debit card additional amounts after the one-year pass was paid in full when, per the contract terms, the Defendant did not possess the contractual right to initiate an electronic fund transfer.

62. The Class action poses questions of law and fact that are common to and affect the rights of all members of the Class and Subclass. Such questions of law and fact common to the Class and Subclasses include, but are not limited to, the following:

   a. Whether or not Defendant breached the form contract with the Class members by continuing to charge them when Defendant had no contractual right nor authorization to do so under the form contract;

   b. If Defendant breached the form contracts, what is the proper measure to be applied in determining damages;

   c. Whether Defendants obtained valid authorization from all EFTA Subclass members to electronically withdraw funds from the Subclass's members' debit or bank accounts;

   d. Whether the periodic electronic withdrawals from EFTA Subclass Members' accounts initiated by Defendant are "preauthorized electronic fund transfers" within the meaning of the EFTA, 15 U.S.C. § 1693a(9) and § 1693e.;

   e. Whether Defendant complied with the requirements of the EFTA in connection with the debits and/or EFTs initiated from EFTA Subclass Members' accounts;

   f. Whether Defendant has violated the EFTA with respect to Plaintiff Kratt, and the EFTA Subclass Members.

63. Based on the facts and circumstances set forth herein, Plaintiffs' claims are typical of the claims of the members of the Class and Subclass, in that they arise out of the same uniform contract. Plaintiffs' claims and the claims of all Class and Subclass members arise out

of Defendant's common course of conduct and Plaintiffs' claims and the claims of all Class and Subclass members are based upon the same legal theories.

64. Plaintiffs, Herman, Cohen, Kratt, and Lancaster will fairly and adequately protect and represent the interests of each member of the Class and Subclass. Plaintiffs understand the issues in this case and are committed to vigorously pursuing this claim on behalf of the Class and Subclass. Plaintiffs have suffered the damages alleged and have no interests antagonistic to the interests of any other Class or Subclass member. Further, neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action.

65. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class and Subclass.

66. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Prosecuting separate actions by individual members of the Class and Subclass would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

67. Further, prosecuting separate actions by individual members of the Class and Subclass would create the risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications. Further, individualized litigation would significantly increase the delay and expense to all parties and to the Court. A Class action presents far fewer management difficulties, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

68. Questions of law or fact common to the Class and Subclass predominate over any questions affecting only individual members as the claims are amenable to common proof based on the Defendant's uniform standardized contract. Since the reasonable expectations of a party to a standardized form contract are judged objectively, the entire Class will win or lose on their claims based upon the same evidence and legal standards.

### FIRST CLAIM FOR RELIEF - BREACH OF CONTRACT
### (ON BEHALF OF FLORIDA, CALIFORNIA, TEXAS AND VIRGINIA CLASS)

69. Plaintiffs, Herman, Cohen, Kratt, Lancaster and the Class members incorporate by reference paragraphs 1 through 68 of this Second Amended Class Complaint as though stated fully herein.

70. Plaintiffs, Herman, Cohen, Kratt, Lancaster and the Class members entered into contracts with the Defendant for a 1 year pass.

71. The contracts provide that "*EXCEPT FOR ANY PASSES PAID IN LESS THAN 12 MONTHS*, THIS CONTRACT WILL RENEW AUTOMATICALLY ON A MONTH-TO-MONTH BASES FOLLOWING THE PAYMENT PERIOD until I terminate it." (Emphasis added).

72. Plaintiffs and the Class members paid for the 1 year pass in less than 12 months.

73. Despite the 1 year passes being paid in less than 12 months, Defendant continued to charge Plaintiffs and the Class members when Defendant had no contractual right nor authorization to do so. By continuing to charge Plaintiffs and the Class members, Defendant breached its contract.

74. Plaintiffs and the Class members have performed all, or substantially all, of the obligations imposed on them under the contract with Defendant.

75. Plaintiffs and the Class members have sustained damages as a result of Defendant's breach of contract.

WHEREFORE, Plaintiffs, Jason Herman, William Cohen, Joey Kratt, Christina Lancaster and the Class request that the Court enter Judgment in their favor for: (1) Certification of this matter to proceed as a class action; (2) actual damages in an amount according to proof; and (3) for such other and further relief as the Court deems just and proper.

### SECOND CLAIM FOR RELIEF - VIOLATION OF THE EFTA
### (ON BEHALF OF FLORIDA, CALIFORNIA, TEXAS AND VIRGINIA CLASS)

76. Plaintiff, Kratt, on behalf of himself and the EFTA Subclass, incorporate by reference paragraphs 1 through 68 of this Second Amended Class Complaint as though fully stated herein

77. Plaintiff and each EFTA Class member maintained an "account" as that term is defined by 15 U.S.C. § 1693(a)(2).

78. Plaintiff and all EFTA Class members, are "consumers" within the meaning of 15 U.S.C. § 1693(a)(5). At all times material hereto, Defendant was a "person" subject to liability under § 1693m of the EFTA.

79. Plaintiff and all EFTA Class members entered into the Defendant's uniform contract for a 1-year pass. The contract states "[b]y accepting below, I agree to pay the down payment (first monthly payment), and thereafter to pay the remaining number of payments, *which will be billed monthly to my credit card.*" (Emphasis added). The foregoing qualifies as a preauthorized EFT under the EFTA as the EFT was authorized in advance to recur at substantially regular intervals.

80. Defendant has violated 15 U.S.C. § 1693e(a), in that Defendant failed to obtain the proper authorization from the Plaintiff and the EFTA Class members, in writing, of the

EFT(s) assessed by Defendant after the one-year passes were paid in less than 12 months. As described in Defendant's contract, Defendant did not have authority to charge the accounts of Plaintiff and the EFTA Class Members after the contract was paid in less than 12 months.

81.  Defendant transferred funds from Plaintiff's and the EFTA Class members' accounts as set forth above without actual authority to initiate those transfers, and for which Plaintiff and the EFTA Class members received no benefit.

WHEREFORE, Plaintiff, Joey Kratt, and the EFTA Class request that the Court enter judgment in their favor for: (1) Certification of this matter to proceed as a class action; (2) actual damages, statutory damages, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(1), 1693m(a)(2)(A), 1693m(a)(B), and 1693m(a)3; and (3) For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class demand a trial by jury for all issues so triable.

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

/s/ Paul R. Fowkes
**PAUL R. FOWKES, ESQ.**
Fla. Bar No. 723886
paul@dispartilaw.com
**RYAN C. HASANBASIC, ESQ.**
Fla. Bar No. 044119
ryan@dispartilaw.com
Disparti Law Group, P.A.
2154 Duck Slough Blvd., Ste. 101
Trinity, Florida 34655

(813) 221-0500
(727) 943-3203 (Facsimile)
Attorneys for Plaintiffs

-18-