UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JASON HERMAN,**
**WILLIAM COHEN,**
**JOEY KRATT, and**
**CHRISTINA**
**LANCASTER,**
*as individuals and on behalf of*
*all others similarly situated,*

        Case No.  **8:14-cv-03028-MSS-EAJ**

    Plaintiff,

v.

**SEAWORLD PARKS &**
**ENTERTAINMENT, INC.,**

    Defendant.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiffs, Jason Herman, Joey Kratt, William Cohen, and Christina Lancaster (collectively, "Plaintiffs"), respond as follows to Defendant, SeaWorld Parks & Entertainment, Inc.'s ("SeaWorld") Motion to Compel Production of Documents ("Motion to Compel") (Dkt. 101).[1]

---

[1] SeaWorld's Motion to Compel fails to comply with Local Rule 3.04(a), which states:

> A motion to compel discovery pursuant to Rule 36 or Rule 37, Fed.R.Civ.P., shall include quotation in full of each interrogatory, question on deposition, request for admission, or request for production to which the motion is addressed; each of which shall be followed immediately by quotation in full of the objection and grounds therefor as stated by the opposing party; or the answer or response which is asserted to be insufficient, immediately followed by a statement of the reason the motion should be granted.  The opposing party shall then respond as required by Rule 3.01(b).

1

I. **INTRODUCTION**

This action is not about the Plaintiffs and their contracts with NetFlix, AT&T, Verizon, the Elks, Dish Network, or any other non-party referenced in SeaWorld's Motion to Compel. Rather, the predominant, common question underlying the Plaintiffs' and putative Class members' claims is: what is the proper interpretation of SeaWorld's one-year EZ Pay Contract language, including the following automatic renewal provision: "EXCEPT FOR ANY PASSES PAID IN LESS THAN 12 MONTHS, THIS CONTRACT WILL RENEW AUTOMATICALLY ON A MONTH-TO-MONTH BASIS FOLLOWING THE PAYMENT PERIOD until I terminate it"? (Hereinafter referred to as the "Qualification Language"). SeaWorld concedes in its Motion to Compel that this is the predominant issue by stating "*[t]he core dispute of this case is the meaning of SeaWorld's EZpay contract and whether SeaWorld breached the contract when it automatically renewed Plaintiffs' annual passes under the contract*." *See* Motion to Compel at p. 8 (Dkt. 101). (Emphasis added). SeaWorld's request for discovery of non-party contracts constitutes a fishing expedition into interpretations of irrelevant contracts made between Plaintiffs and various non-parties. This discovery is unnecessary and its relevance (or lack thereof) is not proportional to the needs of the case.

II. **ARGUMENT**

    A. **Standard**

Motions to compel discovery are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1); *see also Douglas v. Kohl's Dept. Stores, Inc.*, Case No. 6:15-cv-1185, 2016 WL 1637277, at *1 (M.D. Fla. April 25, 2016).

"Relevancy is determined based on the 'tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.' Fed. R. Evid. 401." *Hankinson v. R.T.G. Furniture Corp*., No. 15-81139-civ-Cohn/Seltzer, 2016 WL 1182768, at *1 (S.D. Fla. Mar. 28, 2016) (*quoting Garcia v. Padilla*, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143, at *2 (M.D. Fla. Mar. 8, 2016)). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the court is guided by the non-exclusive list of factors in Rule 26(b)(1)." *American Humanist Ass'n, Inc. v. City of Ocala*, Case No: 5:14-cv-651-Oc-32PRL, 2016 WL 2783719, at *2 (M.D. Fla. May 13, 2016) (*citing Graham & Co., LLC v. Liberty Mut. Fire Ins. Co*., No. 2:14-cv-2148-JHH, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016)). "'Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses.'" *American Humanist Ass'n*, 2016 WL 2783719, at *2 (*quoting Graham & Co., LLC*, 2016 WL 1319697, at *3; *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014)).

### B.     Contracts Between the Plaintiffs and any Non-Party are Irrelevant

Although Plaintiffs have entered into contracts with various non-parties, none of these contracts are at issue in this case. In this case, relevancy rests with the transaction between the parties to the contract (here, Plaintiffs and SeaWorld) and not the contractual arrangements between one of the Plaintiffs and a non-party on an unrelated subject matter. SeaWorld argues

3

that such contracts are discoverable, but cites to no analogous legal authority authorizing such disclosure. No principle of judicial economy or fairness mandates permitting discovery on matters that have absolutely no bearing on the pending action. Courts addressing disclosure of unrelated, non-party contracts have found such documents to be irrelevant and not discoverable.

The decision in *World Wrestling Federation v. William Morris Agency, Inc*., 204 F.R.D. 263 (S.D. N.Y. 2001) is instructive. In *World Wrestling Federation*, the plaintiff sued its advertising agency for breach of contract. *Id*. at 264-65. In discovery, the plaintiff sought documents relating to how the advertising agency dealt with its other clients, including contracts between the advertising agency and non-parties. *Id*. In response, the defendant raised relevancy as its primary objection. *Id*. The plaintiff then filed a motion to compel that was denied by the magistrate judge. The district court judge affirmed the ruling and cited to the following comments made by the magistrate judge:

> Ordinarily, what is relevant in a breach of contract claim is the transaction between the parties to the contract. Ordinarily, contractual agreements between one of the contracting parties and third parties is irrelevant. I appreciate that the standard of relevancy for discovery purposes is not – is looser than the standard at trial. Nevertheless, though, there has to be – the relevance standard for discovery is not unlimited.

*Id*. at 265.

As in *World Wrestling Federation*, the present case involves a breach of contract action between Plaintiffs and SeaWorld. As SeaWorld's Motion to Compel concedes, the predominant, common question in this case is the proper meaning of the language used in the EZ Pay Contract. Accordingly, information pertaining to contractual arrangements between Plaintiffs and various non-parties is wholly irrelevant. In other words, the requested discovery would not tend to prove or disprove an issue in this case.

In the context of a motion to compel discovery, the court in *United States v. Kellogg Brown & Root Root Servs., Inc.*, 284 F.R.D. 22 (D.D.C. 2012) similarly addressed the relevance of contracts between one party and non-parties to the case. Like the argument advanced by SeaWorld in the present case, the defendant in *Kellogg Brown* argued that:

> "it needs documents relating to [other] contracts because they are relevant to the [plaintiff's] interpretation of the contractual provisions at issue here … [defendant] is entitled to know whether there are instances in which [the plaintiff] interprets the same or similar contractual language differently than its current interpretation of the relevant [contract] provisions."

*Id*. at 37. In denying the motion, the court emphasized, "[t]hese contracts were made between different contracting officers and different private contractors, at different times for different purposes." *Id*. at 38. The court further reasoned that "[the defendant] has not explained how the contracts are sufficiently similar to make [the plaintiff's] interpretation of one binding on the other." *Id*. Likewise, in this case, SeaWorld has not explained how the non-party contract language is sufficiently similar to SeaWorld's EZ Pay Contract, and how these non-party contracts would make Plaintiffs' interpretation of the non-party contracts binding on Plaintiffs' interpretation of the Qualification Language in SeaWorld's Contract.

In *University City v. Home Fire & Marine Ins. Co*., 114 F.2d 288 (8th Cir. 1940) the Eighth Circuit Court of Appeals held that evidence of contracts with other parties are irrelevant and not admissible to prove the terms of a separate contract. In doing so, the Court stated:

> Generally, the rule is as follows: 'Evidence of other agreements than the one involved in the particular issue is as a general rule inadmissible, unless the contract in suit was made with reference thereto, or forms a part thereof, or unless it forms a relevant part of the circumstances leading up to and surrounding such contract, or has been referred to fix the terms of the contract in suit, or tends to show the presence or absence of a consideration, or that the contract in issue was not made. Neither is evidence of a similar contract previously made admissible to prove the terms of the contract in

> suit; and evidence of subsequent contracts with other parties is irrelevant. So, where the contract in question supersedes another, the original contract is properly excluded. * * * evidence as to the usual terms of contracts such as the one in issue is inadmissible in the absence of any showing that the parties contracted with reference to such terms. * * * Transactions with a third person are not admissible to prove the terms of a contract.'

*Id*. at 294.

In addition to the authority cited above, numerous courts have either denied motions to compel or held that evidence of other contracts is inadmissible because the contracts were irrelevant. *See, e.g., Sokn v. Fieldcrest Cmty. Unit School District*, Case No. 10-1122, 2013 WL 84702, at *5 (C.D. Ill. Jan. 7, 2013) (denying motion to compel production of contracts other than the contract at issue, reasoning the other contracts were not relevant and thus not discoverable); *Freeman v. Witco Corporation*, Case No. 97-cv-1448, 1999 WL 389892 (E.D. La. June 11, 1999) (denying motion to compel filed by plaintiff seeking other contracts because other contracts are irrelevant as "it is the contract between [plaintiff] and [defendant] which controls here"); *Rushing v. Wells Fargo Bank, N.A.*, Case No. 8:10-cv-1572, 2012 WL 3155790, at * 2 (M.D. Fla. Aug. 3, 2012) (reasoning in dicta that evidence of other contracts "would not normally be relevant"); *So. Cal. Gas Co. v. City of Alhambra*, Case No. 10-cv-8635, 2011 WL 4389655, at * 3 (C.D. Cal. June 6, 2011) (holding that evidence of plaintiff's agreements with non-parties would not establish intent because plaintiffs' "conduct in its performance of other contracts is irrelevant"); *Herlihy Mid-Continent Co. v. Northern Indiana Public Service Co.*, 245 F.2d 440 (7th Cir. 1957)

None of the non-party agreements that SeaWorld seeks has any bearing whatsoever on the subject EZ Pay Contract. For that reason, SeaWorld's Motion to Compel should be denied.

### C. California Law Does Not Support SeaWorld's Position

SeaWorld argues, without analogous supporting authority, that it is entitled to review the non-party contracts because the contracts *may* share similarities to the EZ Pay Contract and California law allows the Court to review extrinsic evidence. However, as explained below, the standardized form contract drafted by SeaWorld must be interpreted *objectively* under California law. SeaWorld's argument does not explain how non-party contracts relate to the *objective* intentions of the parties at the time the contract was executed, nor could this be explained.[2] Simply put, contracts involving non-parties would not and could not assist this Court or a jury in interpreting the parties' *objective* intentions with respect to the EZ Pay Contract.

SeaWorld argues that "[t]he shortest path to granting this motion runs through California law … because of California's hospitality to extrinsic evidence." Motion to Compel at pp. 8, 10. SeaWorld overstates California's rule on extrinsic evidence. First, California courts follow the long-standing legal principle that the determination of the existence or terms of an agreement is made by reference to the *objective intent* of the parties, not subjective intent. Second, California courts strictly construe any ambiguity in a form contract of adhesion – like the subject EZ Pay Contract – against the drafter, and not the consumer.

---

[2] *Assuming arguendo* that the Court considers extrinsic evidence, the Court "can only consider extrinsic evidence that sheds light on the objective meaning of the language as it would have been understood by a reasonable contracting party." *Rodman v. Safeway, Inc.*, Case No. 11-cv-03003, 2015 WL 604985, at * 7 (N.D. Cal. Feb. 12, 2015). Extrinsic evidence is also not relevant to the extent it is only probative of one party's subjective understanding of what it was promising. *Id.* (citing to *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App. 4th 944, 956 (2003) ("The parties' undisclosed intent or understanding is irrelevant to contract interpretation.")).

1. **California, like Florida, Virginia and Texas, follows the Principle that Contracts are Interpreted Pursuant to an Objective Standard and not the Parties' Subjective State of Mind**

Under California law, the determination of the existence or terms of an agreement is made by reference to the objective intent of the parties. *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 866 (9th Cir. 1992). Objective intent is "the intent manifested in the agreement and by surrounding conduct, rather than the subjective beliefs of the parties. For this reason, the true intent of the party is irrelevant if it is unexpressed." *Id.*[3] In other words, the parties' "outward manifestation or expression of assent is controlling." *Binder v. Aetna Life Ins. Co.*, 89 Cal. Rpter.2d 540 (1999).

SeaWorld argues that California law would permit disclosure of other contracts by citing generally to *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101 (E.D. Cal. 2006) and *Lary v. Boston Sci. Corp.*, No. 1:11-cv-23820, 2014 WL 978823 (S.D. Fla. Mar. 13, 2014). Both cases are inapposite. *Meridian* is a case involving copyright issues between businesses – a software company and a construction company, and *Lary* involved a heavily negotiated intellectual property contract, rather than a standardized form contract like what SeaWorld used here. *Rodman v. Safeway, Inc.*, Case No. 11-cv-03003, 2014 WL 988992 (N.D. Cal. Mar. 10, 2014) discusses how a court following California law addresses extrinsic evidence in a consumer class action involving a standardized form contract.

In *Rodman*, the plaintiff moved to certify a nationwide breach of contract class action against Safeway for breaching the terms of the parties' form agreement by charging higher prices

---

[3] *See also Beck v. American Health Group Int'l*, 260 Cal. Rptr. 237, 242 (1999); *Union Bank v. Winnebago Indus.*, 528 F.2d 95, 99 (9th Cir. 1975); *Bryant v. Amtrak*, Case No. 08-cv-458, 2011 WL 291233, at *3 (S.D. Cal. Jan. 26, 2011); *Campbell v. Geithner*, Case No. 10-cv-058761, 2011 WL 6032957, at * 2 (N.D. Cal. Dec. 5, 2011); *Kelley v. Euromarket Designs, Inc.*, Case No. 07-cv-0232, 2008 WL 109332, at *3 (E.D. Cal. Jan. 8, 2008)

for groceries on its online delivery service than it charged in the stores where the groceries were purchased. *Id*. at 5. The plaintiff argued that the court "can determine the parties' rights and obligations from the objective language of the [contract]." *Id*. Just like SeaWorld in this case, Safeway advanced a contrary contractual interpretation, arguing that the "meaning of the form contract varies from customer to customer, and turns on each customer's subjective understanding of the contractual terms." *Id.* at 6. Importantly, the court stated:

> The resolution of this dispute over the meaning of the [contract] is far more likely to hinge on the objectively reasonable interpretation of the contractual language rather than the interrogation of each individual class member's personal understanding of these words. "California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation …[t]he parties' undisclosed intent or understanding is irrelevant to contract interpretation."

*Id*. at 7 (quoting *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003)).

In its analysis, the *Rodman* court also emphasized California's "preference for interpreting form contracts against the drafter." *Id*. at *8 (this issue is addressed in more detail below). The court then stated:

> *[I]n a standardized contract "a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing"*. . . . For all of these reasons, the Court considers it likely that the meaning of the contract will be determined by the objective meaning of the [contract], without resort to extrinsic evidence. But even the need to take into account extrinsic evidence should not defeat certification, provided that the extrinsic evidence is common evidence. If the Court does need to consider extrinsic evidence (to determine whether the language is ambiguous or to resolve any identified ambiguity), extrinsic evidence about the reasonable objective meaning of these words can be considered without endangering predominance. *But the Court is very unlikely to take into account extrinsic evidence for the purpose of*

9

> *concluding that for some customer (unlike others), the meaning of the parties' mutual agreement was to promise price parity with a specific particular store that was envisioned by the particular customer who registered.*

*Id*. (emphasis added). In other words, in the context of a standardized form contract, California courts do not consider extrinsic evidence to make individualized determinations that the form language subjectively meant one thing to some class members and another thing to others. This is exactly what SeaWorld advocates ("[t]he third-party agreements SeaWorld seeks are discoverable because Plaintiffs' experiences with, and understandings of, other agreements similar to the EZpay contract are relevant to their understanding of the EZ Pay contract"). Motion to Compel at p. 9.[4]

The *Rodman* court then went on to rule:

> The Court does not yet reach the question of how the alleged contract should be interpreted, but it can determine after rigorous analysis that there is no obstacle to commonality or predominance. *The scope and proper interpretation of the objective words of the parties' agreement is a common question that applies commonly to all members of the class, is an issue whose resolution will drive resolution of the litigation, and will predominate over any individualized issues*.

*Id*. at *9. (Emphasis added).

Here, SeaWorld's EZ Pay Contract specifically indicates that the parties' mutual assent is limited to the terms of that agreement. *See* Dkt. 78-2 (Exhibit A) ("I ACCEPT THE TERMS OF

---

[4] Like SeaWorld, the defendant in *Rodman* argued that individualized issues predominate because "certain customers learned of the additional charges and continued to shop with Safeway.com after so learning." *Id*. In addressing Safeway's argument, the *Rodman* court stated "[i]f Defendant is arguing that predominance automatically fails if there is *any possibility* that *any* Class Members *might* have consented to the terms of a contract, it would be arguing that no class action could ever be maintained for breach of a form contract." *Id*. at 10. (Emphasis in original). The court then stated "[h]ere, there is no reason to suspect that it is likely that a predominant number of Class Members might have knowingly and willingly chosen to pay an additional fees that they were under no obligation to pay under the terms of the contract." *Id*. In *Rodman*, Plaintiff's nationwide class for breach of contract was certified.

***THIS AGREEMENT***. I ACKNOWLEDGE RECEIPT OF A COPY OF ***THIS DOCUMENT***.") (emphasis added). This language was drafted by SeaWorld, the party that now argues that extrinsic evidence must be introduced to establish the varying subjective intents of Plaintiffs and the class members. This is inconsistent with fundamental principles of contract interpretation in California, Florida, Virginia and Texas. Plaintiffs and the putative class members entered into the same form EZ Pay Contract which contains terms that have an objective and plain meaning. Thus, the subjective state of mind of the parties is irrelevant and extrinsic evidence does not alter this legal principal. As previously mentioned, SeaWorld has conceded that the predominant, common question in this case is the meaning of the EZ Pay Contract. Accordingly, the Court's primary task is to construe the terms of the EZ Pay Contract as written, and contracts between Plaintiffs and unrelated non-parties do not assist in that process.

### 2. California Law Strictly Construes any Ambiguity in a Contract of Adhesion Against the Drafter

The EZ Pay Contract is undisputedly a standardized form contract. It is also a contract of adhesion and, as such, must be interpreted against SeaWorld as its drafter. In *Neal v. State Farm Ins. Cos.*, 10 Cal. Rptr. 781 (Cal. Dist. Ct. App. 1961) the California District Court of Appeal provided a definition for an "adhesion contract": "[t]he term adhesion contract signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Ultimately, the *Neal* court determined that for adhesion contracts, any ambiguities in the drafted terms must be interpreted against the drafting party.[5] California's Supreme Court has adopted the *Neal* court's definition for an "adhesion contract." *See Graham v. Scissor-Tail, Inc.*, 171 Cal. Rptr.

---

[5] *Id*. at 784 (finding that although in contracts of adhesion ambiguities should be interpreted against the drafting party, in the case at bar no ambiguities existed in the disputed contract).

604 (1981) (noting that "the rule requiring the resolution of ambiguities against the drafting party applies with peculiar force in the case of a contract of adhesion.").

In *Tahoe Nat'l Bank v. Phillips*, 4 Cal. 3d 11 (1971), the California Supreme Court discussed the preference for interpreting form contracts against the drafter:

> Since the alleged ambiguities appear in a standardized contract, drafted and selected by the bank, which occupies the superior bargaining position, those ambiguities must be interpreted against the bank. The rule of resolving ambiguities against the drafter 'does not serve as a mere tie-breaker; it rests upon fundamental considerations of policy.' (*Steven v. Fidelity & Casualty Co*. (1962) 58 Cal.2d 862, 871, 27 Cal.Rptr. 172, 178, 377 P.2d 284, 290.) Thus, in determining whether an instrument is reasonably susceptible to an interpretation suggested by the extrinsic evidence, ***one factor for consideration by the court is whether that interpretation would do violence to the principles of construing documents against the party who drafts and selects them. In the present case, we conclude that to permit a creditor to choose an allegedly ambiguous form of agreement, and then by extrinsic evidence seek to give it the effect of a different and unambiguous form, would be to disregard totally the rules respecting interpretation of adhesion contracts, and to create an extreme danger of over-reaching on the part of creditors with superior bargaining positions.*** The bank must bear the responsibility for the creation and use of the assignment it now claims is ambiguous; it is only 'poetic justice' (CEB, s 2.38) if such ambiguity is construed in favor of the borrower.

*Id*. at 20. (Emphasis added).

SeaWorld's EZ Pay Contract is an adhesion contract under California law because it is a standardized form contract, drafted by SeaWorld – a party of superior bargaining strength – and it relegates to the consumer only the opportunity to adhere to the contract or reject it. SeaWorld's corporate representative, Michelle Scott, confirmed this fact at her deposition:

> **Q**. Okay. Now, would you agree that the SeaWorld one-year EZ Pay contracts are standardized forms?
> **A**. Yes.
> **Q.** So the SeaWorld EZpay customer can take it or leave it?

>   **A.** They do not have a way to change the contract wording, no.[6]

Under California law, even if SeaWorld could establish some ambiguity in the EZ Pay Contract and even if that extrinsic evidence was available, the extrinsic evidence would be unhelpful (and therefore not proportional) because the ambiguous contract terms would be interpreted against SeaWorld. Thus, if ambiguity even became an issue, SeaWorld could not demonstrate, that extrinsic evidence of ambiguity would affect its liability for breach of contract. *See Ewert v. Ebay, Inc.*, Case No. c-07-02198, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010); *See also Vedachalam v. Tata Consultancy Servs., Ltd.*, Case No. 06-cv-0963, 2012 WL 1110004, at *9 (N.D. Cal. Apr. 2, 2012), leave to appeal denied (June 13, 2012 (applying *Tahoe Nat'l Bank*)).

### 3. SeaWorld Misrepresents to the Court Mr. Herman's Deposition Testimony Regarding Ambiguity

In the Motion to Compel, SeaWorld argues that extrinsic evidence should be discoverable, *inter alia*, because Plaintiff, Jason Herman, admitted that the EZ Pay Contract is ambiguous in his deposition. *See* Motion to Compel at p. 9. That is false. To reach this conclusion, SeaWorld references Mr. Herman's deposition transcript, page 54, lines 7 through 13. That testimony is as follows:

>   Q. Is it possible, Mr. Herman, that a customer like you who bought an annual pass like yours that was paid for in 12 monthly payments spread over 12 months would have believed that their contract should auto renew under the language of this contract?
>
>   A. Is it possible?
>
>   Q. Yes.

As indicated, it is ***SeaWorld's counsel*** saying "Yes" to Mr. Herman's request for clarification of the original question. The "Yes" that SeaWorld relies upon did not even come out of Mr. Herman's

---

[6] Michelle Scott Dep. 132:12-18. (Dkt. 93 Exhibit A).

mouth. Further, SeaWorld leaves out lines 14 through 22 immediately following the above-referenced testimony, in which Mr. Herman clearly stated that SeaWorld's interpretation is *unreasonable*. The full testimony on this issue is as follows:

> **Q**. Is it possible, Mr. Herman, that a customer like you who bought an annual pass like yours that was paid for in 12 monthly payments spread over 12 months would have believed that their contract should auto renew under the language of this contract?
> **A**. Is it possible?
>
> **Q**. Yes.
>
> MR. HASANBASIC.   Object to form on that one.
>
> THE WITNESS.   I mean, I guess anything is possible.
>
> BY MR. DEIHL.
> **Q**. Go ahead.
>
> **A.** I mean, I don't -- I don't think that's -- ***I don't think that's a reasonable view of looking at this.*** And when I got the confirming e-mail, it also said just be 12 payments.

*See* Response, Carroll Decl. Ex. 8 (Herman Dep.) 54:7-22 (emphasis added).  As Mr. Herman recognized, it is always possible that someone could interpret the EZ Pay Contract, or any document for that matter, in an *unreasonable* way.  An unreasonable interpretation, however, does not create ambiguity. *See, e.g., Silvin v. Geico General Ins. Co.*, 517 Fed.Appx. 781, 784 (11th Cir. 2013 (holding that "[b]ecause we find Silvin's suggested interpretation to be unreasonable, we also reject his argument that the policy language is ambiguous").

    SeaWorld misrepresented the same testimony in its Response to Plaintiffs' Motion for Class Certification.  *See* Defendant's Response to Motion for Class Certification at 20, n. 9 (Dkt. 99).  To be clear:  Plaintiffs, including Mr. Herman, have always maintained that the EZ Pay Contract is **_un_**ambiguous.   The Contract language is clear.   The wording of the subject

Qualification Language has a plain, objective meaning. The Contract can and should be interpreted within the four corners of the document.

### III. CONCLUSION

Contracts between Plaintiffs and unrelated non-parties are entirely irrelevant to this case. SeaWorld's attempt to obtain such discovery in this case is not supported by California case law (or Florida, Texas and Virginia law). As SeaWorld itself suggests in the Motion to Compel, the predominant, common issue underlying the Plaintiffs' and putative Class members' claims is the proper interpretation of SeaWorld's one-year EZ Pay Contract. The Court's primary task is to construe the terms of the EZ Pay Contract objectively as written. Accordingly, Plaintiffs respectfully request that this Court deny SeaWorld's Motion to Compel.

### CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which shall provide notice to all parties in this action.

Respectfully submitted by:

/s/ *Paul R. Fowkes*
Paul R. Fowkes, Esq.
Fla. Bar No. 723886
Ryan C. Hasanbasic, Esq.
Fla. Bar No. 044119
Disparti Law Group, P.A.
2154 Duck Slough Blvd., Ste. 101
Trinity, FL 34655
(813) 221-0500
(727) 943-3203 (Facsimile)