UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON HERMAN, WILLIAM COHEN,
JOEY KRATT and CHRISTINA
LANCASTER,

    Plaintiffs,

v.                                                           Case No: 8:14-cv-3028-T-35JSS

SEAWORLD PARKS &
ENTERTAINMENT, INC.,

    Defendant.
_____/

**ORDER ON DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS**

THIS MATTER is before the Court on Defendant SeaWorld Parks & Entertainment, Inc.'s ("SeaWorld") Motion to Compel Production of Documents ("Motion") (Dkt. 101) and Plaintiffs' Response in Opposition ("Response") (Dkt. 104). On July 1, 2016, a hearing was held on the Motion. Upon consideration of the Motion, the Response, and the parties' oral arguments at the hearing, the Motion is denied.

**BACKGROUND**

Plaintiffs bring a class action complaint with four named Plaintiffs, Jason Herman, William Cohen, Joey Kratt, and Christina Lancaster, on behalf of class members who are residents of Florida, Texas, Virginia, and California. (Dkt. 72 at ¶ 57.) Plaintiffs allege that they purchased one-year passes through SeaWorld's "EZpay" system, allowing them to pay for one years' unlimited use of a SeaWorld park in twelve installments. (*Id.* at ¶ 11.) Plaintiffs, like all purchasers through the EZpay system, entered into EZpay contracts, paid the initial installment on the date

they entered the EZpay contracts, and agreed, under the EZpay contracts, to be automatically debited or charged, as applicable, monthly for the remaining eleven installments.  (*Id.* at ¶ 12.)

At issue in this case is the provision of the EZpay contract regarding automatic renewal, which provides as follows:

> EXCEPT FOR ANY PASSES PAID IN LESS THAN 12 MONTHS, THIS CONTRACT WILL RENEW AUTOMATICALLY ON A MONTH-TO-MONTH BASIS FOLLOWING THE PAYMENT PERIOD until [the purchaser] terminate[s] it.

(Dkt. 85, Ex. 2.)  Plaintiffs allege that, despite this language, SeaWorld routinely renews the EZpay contracts "for those consumers that make all payments in less than twelve months."  (Dkt. 72 at ¶ 13.)  For example, Plaintiffs allege that Mr. Herman purchased his EZpay pass in March 2013, paid his first installment upon purchase in March 2013, and completed his installment payments in February 2014.  (*Id.* at ¶¶ 14–15.)  Plaintiffs allege that, although Mr. Herman paid his pass in less than twelve months, SeaWorld renewed his pass automatically and continued to charge his credit card monthly after February 2014.  (*Id.* at ¶¶ 17, 29–33.)

Plaintiffs seek damages for SeaWorld's alleged (1) breach of contract for renewing their EZpay contracts without the contractual authority to do so and (2) violation of Section 1693e(a) of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, for transferring funds from Plaintiffs' accounts to SeaWorld's without Plaintiffs' authorization to make such transfers.  (*Id.* at ¶¶ 1, 69–81.)

The Motion seeks an order (1) compelling production of documents responsive to two requests for production to Plaintiffs and (2) awarding SeaWorld its fees and costs incurred in bringing the Motion.  (Dkt. 101.)  In both requests for production, SeaWorld seeks copies of contracts between Plaintiffs and non-parties, such as Dish Network, SiriusXM, and AT&T, that "share similarities with the EZpay contract, such as recurring payments, automatic payments, or

automatic renewals" ("Non-Party Contracts"). (*Id.* at 2.) SeaWorld argues that the Non-Party Contracts are relevant to their defense of Plaintiffs' action because "the meaning of SeaWorld's EZpay contract" is the core issue of the case and, because the EZpay contracts' automatic renewal provision is ambiguous, "Plaintiffs' experience with similar agreements will inform their intent" in entering the EZpay contracts. (*Id.*) SeaWorld does not specify the law governing the EZpay contracts, but argues that under substantive contract law of California, Florida, Texas, and Virginia, the states in which alleged class members reside (Dkt. 72 at ¶ 57), extrinsic evidence, i.e. the Non-Party Contracts, is relevant to understand Plaintiffs' understanding of the EZpay contracts' automatic renewal provision. (Dkt. 101 at 2.)

In the Response, Plaintiffs argue that the Non-Party Contracts are irrelevant and not proportional to the needs of the case. (Dkt. 104 at 2.) Specifically, Plaintiffs argue that the Non-Party Contracts have no bearing on the claims and defenses in this case because the Non-Party Contracts involve parties and surrounding circumstances different from the EZpay contracts and, accordingly, will not aid in the interpretation of the EZpay contracts' automatic renewal provision. (*Id.* at 3–6.) Further, Plaintiffs contend that the EZpay contracts' automatic renewal provision is unambiguous and, therefore, extrinsic evidence is not permitted. (*Id.* at 14–15.)

**APPLICABLE STANDARDS**

A party, "[o]n notice to other parties and all affected persons," may move to compel discovery. Fed. R. Civ. P. 37(a)(1). "The Federal Rules of Civil Procedure strongly favor full discovery whenever possible," but the trial court "is given wide discretion in setting the limits of discovery." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984) ("Case law states that a motion to compel discovery is committed to the discretion of the trial court"). "The party

resisting discovery has the burden to show that the requested discovery is not relevant and that the production of such discovery would be unduly burdensome." *Benavides v. Velocity IQ, Inc.*, No. 8:05-CV-1536-T-30, 2006 WL 680656, at *2 (M.D. Fla. Mar. 15, 2006).

Through discovery, parties may obtain materials that are within the scope of discovery, meaning they are nonprivileged, relevant to any party's claim or defense, and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The term "relevant" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Courts consider the following factors when evaluating proportionality: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Materials "need not be admissible in evidence to be discoverable." *Id.*

## ANALYSIS

The issue before the Court is whether the Non-Party Contracts are within the scope of discovery, i.e. "relevant to any party's claim or defense and proportional to the needs of the case." *Id.* Discovery is thus shaped by the allegations in the complaint in that discovery must be relevant to the claims at issue in the litigation. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997) ("The scope of allowable discovery is determined by the claims (and defenses) raised in the case."). Although the scope of discovery is broad, "the discovery rules do not permit the [parties] to go on a fishing expedition." *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).

As noted above, the Non-Party Contracts were entered into between Plaintiffs and non-parties under different circumstances and are not referenced as part of Plaintiffs' claims or allegations or as part of SeaWorld's defenses. SeaWorld has not cited to decisions in which production of a contract between a party and non-party that is not the subject of the litigation has been compelled. Plaintiffs, on the other hand, have cited numerous decisions holding that such production should not be compelled because it is not relevant. (Dkt. 104 at 3–6.) *E.g. World Wrestling Fed'n Entm't, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 (S.D.N.Y. 2001) (concluding that, although the discovery standard of relevancy is broad, contracts defendant entered with non-parties do not illuminate the interpretation of defendant's contract with plaintiff and the burden of discovery outweighed any benefit); *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 37-38 (D.D.C. 2012) (denying defendant's motion to compel contracts plaintiff entered with non-parties because the "contracts were made between different contracting officers and different private contractors, at different times for different purposes" and therefore defendant "has not convinced the Court how and to what degree these other contracts are similar" "to make the [plaintiff's] interpretation of one binding on the other"); *Freeman v. Witco Corp.*, No. CIV. A. 97-1448, 1999 WL 389892, at *1 (E.D. La. June 11, 1999) (denying defendant's motion to compel contracts from an indemnifying non-party because contracts between the non-party and its non-party clients were irrelevant to the court's interpretation of the disputed contract because "interpretation of the contract is usually limited to the document itself").

The Court is persuaded by Plaintiffs' arguments and case authorities. The Motion and discovery SeaWorld seeks to compel relates to information that is irrelevant to the claims or defenses at issue in this matter. Despite SeaWorld's contention that the parties' interpretation of the automatic renewal provision of the EZpay contracts is the "core" issue of the case, SeaWorld

has not shown that Plaintiffs' understanding of contracts that have different language, terms, and subject matter has any bearing or relevance on the issues in this case. Plaintiffs' understanding of contracts with language varying from SeaWorld's contract has not been shown to be relevant to the matters in dispute here. Additionally, at this juncture, there are no determinations as to the state law governing the various EZpay contracts, whether the EZpay contracts are ambiguous, whether the governing law of the EZpay contracts permits the use of extrinsic evidence to interpret them, or whether the Non-Party Contracts are the type of extrinsic evidence permissible to interpret an ambiguity.[1] The Motion does not seek such determinations, the issues have not been briefed, and any such determinations would be premature.

SeaWorld has also failed to show that the discovery it seeks is proportional to the needs of the case. SeaWorld argues that it has narrowed its requests to specific contracts and thus production would not be unduly burdensome. (Dkt. 101 at 6–8.) However, looking to the proportionality factors set forth in Rule 26(b)(1), because the Non-Party Contracts are irrelevant to the issues in this case, the Non-Party Contracts have no "importance" or "likely benefit" in resolving the issues in this case. Fed. R. Civ. P. 26(b)(1); *see Kellogg*, 284 F.R.D. at 38 (holding that the "burden and expense" of discovery of contracts with non-parties "could be massive, and these productions are unlikely to yield much directly relevant information" and, therefore, the discovery request was "the definition of a fishing expedition that violates the limits on discovery"). As a result, the discovery sought is not proportional to the needs of this case. SeaWorld's attempt

---

[1] It is of note, however, that Florida contract law, by way of example, buttresses the Court's determination that the Non-Party Contracts are irrelevant to the parties' claims and defenses because they are not the type of extrinsic evidence permitted to interpret contract ambiguities. *See Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 955 (Fla. 2013) (emphasis added) (quoting *Black's Law Dictionary* 637 (9th ed. 2009) and explaining that extrinsic evidence is evidence "relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements *between the parties* or the circumstances *surrounding the agreement*."). The Non-Party contracts do not relate to the EZpay contracts, are not between the parties to this case, and are not evidence surrounding the parties' entering the EZpay contracts. Therefore, they are not the type of extrinsic evidence admissible to interpret an ambiguity in the EZ pay contracts' automatic renewal provision, should an ambiguity be determined to exist.

to discover contracts that are not in dispute and involve different parties, terms, and surrounding circumstances appears to be a "fishing expedition," which is not permissible under the applicable rules of discovery.  *See Porter*, 461 F.3d at 1324.

Accordingly, it is

**ORDERED** that the Motion (Dkt. 101) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on July 13, 2016.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record