**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JASON HERMAN, JOEY KRATT, and
CHRISTINA LANCASTER, as
individuals and on behalf of those
similarly situated,**

    **Plaintiffs,**

v.                                                   Case No: 8:14-cv-3028-T-35JSS

**SEAWORLD PARKS &
ENTERTAINMENT, INC.,**

    **Defendant.**
_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of (1) Plaintiffs' Motion for Summary Judgment as to Liability (Dkt. 123), Defendant SeaWorld Parks & Entertainment, Inc.'s response in opposition (Dkt. 126), and Plaintiffs' reply (Dkt. 128); (2) SeaWorld's Motion for Partial Summary Judgment on the Breach of Contract Claim (Dkt. 124), Plaintiffs' response in opposition (Dkt. 125), and SeaWorld's reply (Dkt. 127); and (3) the parties' Stipulation of Undisputed Facts (Dkt. 122). Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Plaintiffs' motion for summary judgment and **DENIES** SeaWorld's motion for partial summary judgment.

**I.**    **BACKGROUND**

The relevant facts are fully set forth in the Court's March 10, 2017, Order granting Plaintiffs' motion for class certification. (Dkt. 135) In brief, Plaintiffs purchased annual passes to theme parks owned by SeaWorld through SeaWorld's "EZ Pay" system, which

allowed consumers to pay for an annual pass over twelve installments in essentially eleven months. This action arises out of SeaWorld's renewal of the EZ Pay passes, which is governed by the following provision in the EZ Pay contract:

> EXCEPT FOR ANY PASSES PAID IN LESS THAN 12 MONTHS, THIS CONTRACT WILL RENEW AUTOMATICALLY ON A MONTH-TO-MONTH BASIS FOLLOWING THE PAYMENT PERIOD until I terminate it.

(Dkt. 93-4) Because the first and second installments under the EZ Pay contract were paid within a single month's time and the remaining ten installments were paid in the ensuing ten months, all passes were "paid in less than 12 months." Plaintiffs have sued SeaWorld because, contrary to the language of its contract, SeaWorld systemically renewed passes that were "paid in less than 12 months" without the subsequent approval of the Plaintiffs.

Specifically, in the Second Amended Complaint, Plaintiffs allege claims against SeaWorld for breach of contract (Count I), and for violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e(a) (Count II). (Dkt. 72) SeaWorld moves for summary judgment on the breach-of-contract claim only. Plaintiffs move for summary judgment on the issue of liability for both claims.

## II. STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no

2

genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence viewed "in the light most favorable to the non-moving party." Fennell, 559 F.3d at 1216. A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court "that there is an absence of evidence to support the non-moving party's case." Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (internal quotation marks omitted).

When a moving party has discharged its burden, the non-moving party must designate specific facts that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

### A. Breach of Contract (Count I)

As defined in the March 10, 2017, Order, the breach-of-contract sub-class includes residents of Florida, Texas, Virginia, and California, the four states in which SeaWorld operates theme parks. (Dkt. 135 at 49-50). As a result, the parties agree that Plaintiffs' breach-of-contract claim is governed by the laws of Florida, Texas, Virginia, and California.[1] In each state, the elements of a breach-of-contract claim include: (1) a valid

---

[1] SeaWorld argued that because the named Plaintiffs are residents of Florida and Virginia, the claim is governed by Florida and Virginia law until the Court certifies a class containing Texas and

3

contract, (2) a breach, and (3) damages. Richman v. Hartley, 169 Cal. Rptr. 3d 475, 478 (Cal. Ct. App. 2014); Havens v. Coast Fla., P.A., 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013); Hussong v. Schwan's Sales Enters., Inc., 896 S.W.2d 320, 326 (Tex. Ct. App. 1995); Filak v. George, 594 S.E.2d 610, 614 (Va. 2004).

SeaWorld argues that if it lacked authority to renew an EZ Pay pass paid in less than twelve months, then the EZ Pay contract expired by the time SeaWorld began collecting unauthorized monthly payments. SeaWorld thus maintains that Plaintiffs are unable to establish the threshold element of their claim: the existence of a valid contract.

In response, Plaintiffs argue that SeaWorld breached the EZ Pay contract while it was still in existence by failing to ensure that the contract was properly terminated. Alternatively, Plaintiffs contend that SeaWorld breached the EZ Pay contract by collecting unauthorized payments after the contract expired. Plaintiffs also assert that SeaWorld should be judicially-estopped from raising this argument because SeaWorld previously insisted, when seeking dismissal of Plaintiffs' unjust-enrichment claim, that SeaWorld's unauthorized conduct could only be characterized as a contractual breach.

For the reasons explained below, the Court holds that Plaintiffs establish a breach of the EZ Pay contract based on SeaWorld's unauthorized renewal during the contract period, and based on SeaWorld's unauthorized charges after the contract expired. The Court therefore declines to address Plaintiffs' judicial-estoppel argument.

---

California consumers. (Dkt. 124 at 8; Dkt. 126 at 10) The Court has now certified a class of consumers from all four states, and SeaWorld has not requested an opportunity to brief the contract claim under Texas and California law. With respect to the issues addressed in this Order, the law of all four states is substantially similar.

### 1. The EZ Pay contract contemplated a one-year term

The EZ Pay contract does not specify a termination date. (Dkt. 93-4) In Florida, "in the absence of an express provision as to duration in a contract, the intention of the parties with respect to duration and termination is to be determined from the surrounding circumstances and by application of a reasonable construction of the agreement as a whole." Sound City, Inc. v. Kessler, 316 So. 2d 315, 318 (Fla. 1st DCA 1975). Similarly, under California law, a court examines the totality of the circumstances, including whether "the obligations of the contract were impliedly conditioned as to duration upon the occurrence or nonoccurrence of some event or situation." Consol. Theatres, Inc. v. Theatrical Stage Emp. Union, Local 16, 447 P.2d 325, 333 (1968). Case law from Texas and Virginia is in accord. Fred Loya Ins. Agency, Inc. v. Cohen, 446 S.W.3d 913, 924 (Tex. Ct. App. 2014); Johnston v. William E. Wood & Assocs., Inc., 787 S.E.2d 103, 104 (Va. 2016).

Under the terms of the EZ Pay contract, Plaintiffs purchased a "1 Year" annual pass, and Plaintiffs paid SeaWorld in twelve installments. (Dkt. 93-4) Based on the totality of the circumstances, the Court holds that the EZ Pay contract endured for one year, absent a renewal or cancellation. Both sides tacitly agree on that construction. (E.g., Dkt. 125 at 6, Dkt. 126 at 21)

### 2. SeaWorld breached the EZ Pay contract by renewing during the one-year term

Plaintiffs allege that SeaWorld breached the renewal provision, which states:

EXCEPT FOR ANY PASSES PAID IN LESS THAN 12 MONTHS, THIS CONTRACT WILL RENEW AUTOMATICALLY ON A MONTH-TO-MONTH BASIS FOLLOWING THE PAYMENT PERIOD until I terminate it.

(Dkt. 93-4)

SeaWorld suggests that Plaintiffs' "renewal-as-breach" theory was not adequately pleaded in the Second Amended Complaint. SeaWorld is correct that within the body of Count I, Plaintiffs alleged that SeaWorld breached the EZ Pay contract by "continuing to charge Plaintiffs." (Dkt. 72 at ¶¶ 7-75) However, Count I also incorporated the preceding paragraphs by reference. (Id. at ¶ 69) In Paragraph 13, Plaintiffs alleged that SeaWorld "is not permitted to automatically renew accounts that are paid in less than twelve months" and in Paragraph 60, Plaintiffs alleged that SeaWorld "did not possess the contractual right to renew the contract and/or charge any additional amount after the pass was paid in full." Accordingly, the Second Amended Complaint gives SeaWorld ample notice of the basis for Plaintiffs' contract claim.

SeaWorld next argues that Plaintiffs fail to identify any record evidence to establish that a renewal actually took place during the one-year term. In response, Plaintiffs correctly observe that SeaWorld's installment plan requires a final payment by the first day of the twelfth month, at which point the EZ Pay pass is "paid." (Dkt. 123-3 at 2-3) Plaintiffs persuasively argue that under the terms of the renewal provision, SeaWorld was required to ensure by that date, or at the latest, by the final day of the twelfth month, that the EZ Pay contract did not renew. However, Brad Matzinger, a SeaWorld representative, testified that an annual EZ Pay pass would renew unless a consumer accelerated her payment schedule. (Dkt. 125-1 at 5) Michelle Scott, another SeaWorld representative, similarly testified that an EZ Pay pass for a given year may expire but "that does not remove someone from the program." (Dkt. 93-1 at 13)

Based on this evidence, Plaintiffs demonstrate that SeaWorld breached the EZ Pay contract during the one-year contract term by failing to ensure that the contract did

6

not renew once the passes were "paid." SeaWorld identifies no record evidence to create a genuine factual dispute on this issue.

Instead, SeaWorld raises two legal arguments, neither of which supports a different conclusion. SeaWorld maintains that, as a matter of contract law, it could not have renewed the EZ Pay contract without Plaintiffs' consent. SeaWorld is correct, but as Plaintiffs point out, that is precisely why SeaWorld breached the renewal provision. A breach, by definition, is an unauthorized act.

SeaWorld also insists that it committed no "act" because the EZ Pay contracts "automatically" renewed. (Dkt. 126 at 22) SeaWorld overlooks the well-settled principle that a contract may be breached by a failure to perform. E.g., Mays v. Pierce, 203 S.W.3d 564, 575 (Tex. Ct. App. 2006) ("A breach of contract occurs when a party fails or refuses to do something he has promised to do.") In this case, SeaWorld failed to properly terminate the EZ Pay contract.

The only remaining question, which SeaWorld does not directly address, perhaps because it has no available legal challenge, is whether SeaWorld's failure to terminate the EZ Pay contract constitutes an actionable breach. In Florida, a breach must be "material," such that it "goes to the essence of the contract." Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker, 160 So. 3d 955, 960 (Fla. 5th DCA 2015). In California, Texas, and Virginia, a breach must cause actual and ascertainable damage. Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage"); Levine v. Steve Scharn Custom Homes, Inc., 448 S.W.3d 637, 655 (Tex. Ct. App. 2014) (noting that damages are recoverable for immaterial breaches, assuming that

the damages are specific to the breaches); Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 135 (Va. 2009) ("The plaintiff bears the burden to establish the element of damages with reasonable certainty").

SeaWorld's failure to terminate the contract unquestionably goes to the "essence" of the contract. Plaintiffs bargained for a one-year pass, not a pass of indefinite duration. And it is undisputed that Plaintiffs suffered damages in the form of unauthorized charges. Although those charges may have occurred after the contract expired, they are "damages flowing from the breach." Knowles v. C. I. T. Corp., 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977); accord Va. Elec. & Power Co. v. Bransen Energy, Inc., 850 F.3d 645, 658 (4th Cir. 2017) ("Direct damages are those which flow naturally or ordinarily from the contract breach.")

Based on the foregoing, the Court holds that SeaWorld breached the EZ Pay contract during the contract term.

### 3. SeaWorld breached the EZ Pay contract by collecting unauthorized payments after the contract expired

SeaWorld maintains that Plaintiffs are unable to establish their alternative theory—that the unauthorized payments themselves constituted a breach—because, by Plaintiffs' own admission, the contracts expired by the time the payments were collected. In support of this argument, SeaWorld cites several cases in which the defendant denied having any obligation to perform under an expired or terminated contract.[2]

---

[2] CBX Techs., Inc. v. GCC Techs., LLC, 533 F. App'x 182 (4th Cir. 2013) (defendant argued that it was not bound by expired contract); E. Bay Union of Machinists, Local 1304, United Steelworkers of Am., AFL-CIO v. Fibreboard Paper Prod. Corp., 285 F. Supp. 282 (N.D. Cal. 1968) (defendant argued that it was relieved of any obligations under terminated contract); Grubb & Ellis Co. v. Potomac Med. Bldg., LLC, No. 1:08-cv-971, 2009 WL 3175999 (E.D. Va. Sept. 30, 2009) (defendant denied obligation to pay commissions after the contract automatically expired);

The instant case presents the opposite situation. SeaWorld did not reject the EZ Pay contract; it unilaterally continued to claim benefits under the contract. Under these circumstances, SeaWorld's actions constitute a breach, despite the fact that SeaWorld collected the unauthorized payments after the EZ Pay contract expired. See Stanley Educ. Methods, Inc. v. Becker C.P.A. Review Course, Inc., 536 F.2d 86, 89-91 (5th Cir. 1976) (under Texas law, holding that the defendant's continued use of educational material after the contract expired constituted a breach of contract); Hill v. Spencer & Son, Inc., 973 S.W.2d 772, 774 (Tex. Ct. App. 1998) (holding that evidence supported damages award on breach-of-contract claim where the defendant continued to cut timber after the contract expired); Ironforge.com v. Paychex, Inc., 747 F. Supp. 2d 384, 400 (W.D.N.Y. 2010) (holding that plaintiff stated a claim for breach of contract based on unauthorized withdrawals after plaintiff canceled contract); Dunkin' Donuts Franchised Rests. LLC v. D & D Donuts, Inc., 566 F. Supp. 2d 1350, 1355 (M.D. Fla. 2008) (holding that franchisor demonstrated a likelihood of success on a breach-of-contract claim based on franchisee's continued operation of a donut shop after contract expired).

SeaWorld cites one case that reaches a different result. In Strickland v. Burch, the holder of a power of attorney continued to exercise his authority after the power of attorney terminated. No. 3:13-cv-1383, 2014 WL 3417611 (M.D. Fla. July 14, 2014). The court dismissed the contract claim, briefly stating that "[t]o the extent that the contract had already terminated or was otherwise invalid, Plaintiffs have failed to allege the existence of a contract." Id. at *5. The court cited no legal authority and appeared to

---

Sungard Recovery Servs. L.P. v. Unisource Worldwide, Inc., No. 02-cv-3845, 2002 WL 32107941 (E.D. Pa. Oct. 30, 2002) (defendant denied obligation to pay under expired agreement).

rely on the fact that the plaintiffs made only a "conclusory declaration that they have alleged all the requisite elements of a breach of contract claim." Id.

In this action, Plaintiffs do more than conclusorily assert that a breach occurred. Under the terms of the renewal provision, SeaWorld was obligated to terminate the EZ Pay contract. SeaWorld instead breached the renewal provision by continuing to claim the benefits of the EZ Pay contract. Under these circumstances, and consistent with the weight of authority, the Court holds that Plaintiffs establish a breach of the EZ Pay contract based on SeaWorld's continued collection of unauthorized payments.

### 4. No affirmative defense precludes liability

As a final matter, Plaintiffs assert that SeaWorld's affirmative defenses do not preclude a finding of liability. SeaWorld fails to respond to this portion of Plaintiffs' motion.

Plaintiffs correctly argue that SeaWorld's first and seventh defenses—failure to state a claim and dismissal in favor of arbitration—already have been resolved adversely to SeaWorld. (See Dkts. 37, 121)

The second affirmative defense alleges accord and satisfaction, and the third affirmative defense alleges compromise and settlement. In the March 10, 2017, Order, the Court explained that any class member who received a full refund has been excluded from the class, and the second affirmative defense is therefore moot. (Dkt. 135 at 44) With respect to a class member who received only a partial refund, Plaintiffs acknowledge that such a class member may be subject to a settlement defense. (Dkt. 123 at 20) Accordingly, the parties may address the third affirmative defense during the damages

phase of this litigation. Likewise, the fifth and ninth affirmative defenses—failure to mitigate and set-off—pertain only to the issue of damages. (Dkt. 135 at 45-47)

The fourth and sixth affirmative defenses assert knowledge-based defenses of waiver, estoppel, modification, novation, and ratification. In the March 10, 2017, Order, the Court rejected the knowledge-based defenses because no class member could have possessed "full knowledge" of SeaWorld's competing construction of the EZ Pay contract. (Dkt. 135 at 41-44)

The eighth affirmative defense challenges the timeliness of this action based on statute of limitations, laches, and acquiescence. Because the class is defined to include only those claims within the applicable statute of limitations, the statute-of-limitations defense is moot. (Dkt. 135 at 49-50) Plaintiffs argue that the equitable defenses of laches and acquiescence are also not at issue because Plaintiffs assert no equitable claims. SeaWorld offers no argument and cites no record evidence to buttress its laches and acquiescence defense.

Based on the foregoing, the Court finds that SeaWorld's affirmative defenses do not preclude a finding of liability. Plaintiffs' motion for summary judgment is therefore **GRANTED** as to liability on Count I. SeaWorld's cross-motion for summary judgment on Count I is **DENIED**. SeaWorld's affirmative defenses of failure-to-mitigate, settlement, and set-off will be addressed during the damages phase of this litigation.

### B. Electronic Funds Transfer Act (Count II)

The Electronic Funds Transfer Act ("EFTA") establishes the "rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems," with the primary objective of protecting the rights of consumers. 15 U.S.C. § 1693. To

11

further its legislative goals, the EFTA creates a private right of action against "any person who fails to comply with any provision of this subchapter with respect to any consumer." 16 U.S.C. § 1693m(a).

In Count II, Plaintiffs allege that SeaWorld violated 15 U.S.C. § 1693e(a), which provides: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." The EFTA defines "preauthorized electronic fund transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10). Plaintiffs contend that SeaWorld violated 15 U.S.C. § 1693e(a) because it failed to obtain preauthorization for bank-account and debit-card transfers made after the EZ Pay contract expired. (Dkt. 72 at ¶ 80; Dkt. 123 at 6)

In response, SeaWorld argues that a material factual dispute exists as to whether the challenged transfers qualify as "preauthorized electric fund transfers" under 15 U.S.C. § 1693a(10). Without any meaningful analysis, SeaWorld suggests that the challenged transfers may instead qualify as "unauthorized electronic fund transfers," which EFTA defines as:

> an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, but the term does not include any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution.

15 U.S.C. § 1693a(12).

SeaWorld's argument is irrelevant. Even if the challenged transfers are "unauthorized electronic fund transfers" within the meaning of § 1693a(12), the transfers may, at the same time, qualify as "preauthorized electronic fund transfers," as defined in § 1693a(10). The Sixth Circuit Court of Appeals explains that the two terms address separate concepts:

> [T]he statute's definition of "unauthorized" transfers has nothing to do with whether, or when, [Defendant] violated the requirements governing "preauthorized" transfers. The two provisions are related in the sense that a preplanned, recurring transfer made without meeting § 1693e(a)'s prerequisites may also become an "unauthorized" transfer once the claimant satisfies § 1693a(1[2])'s other elements. But the provisions impose different requirements with different consequences. . . . [A] payee that arranges a covered preauthorized transfer may face liability under § 1693e(a) whether or not the transfer is "unauthorized." Whether the transfer is also "unauthorized" under § 1693a(1[2]), in fact, matters only to whether the consumer, his financial institution or both will bear ultimate responsibility for a particular transfer the consumer later contests. Whether the monthly withdrawals from [Plaintiff's] account were "unauthorized" thus may determine whether she can force her bank to reimburse her, but it has nothing to do with whether [Defendant] violated § 1693e(a).

Wike v. Vertrue, Inc., 566 F.3d 590, 594-95 (6th Cir. 2009). SeaWorld offers no competing analysis of the two statutory terms.

SeaWorld does not expressly dispute that if an electronic fund transfer was taken in violation of the terms of the EZ Pay contract it would violate Section 1693e(a).[3] (See generally Dkt. 126 at 22-26) Case law addressing similar claims under Section 1693e(a) is limited, but courts consistently hold that an electronic fund transfer is not properly "preauthorized" under Section 1693e(a) when the transfer is inconsistent with the terms of the parties' original contract. In such a case, the defendant obtains no authorization

---

[3] The EFTA sub-class includes only those persons who "were charged through an electronic fund transfer to their debit or bank account any additional monthly payments for renewal of the pass after the one-year pass was paid in full." (Dkt. 135 at 50)

for the transfer, much less the written preauthorization required by Section 1693e(a). Starks v. Geico Indem. Co., No. CV-15-5771, 2015 WL 12942282, at *4 (C.D. Cal. Nov. 10, 2015) ("Plaintiffs allege that Defendant did not obtain any authorization, much less written authorization, prior to debiting their account"); 15 U.S.C. § 1693e(a) ("A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing").

For instance, in Starks, the plaintiffs authorized their automobile insurer to debit "a set amount of money" to pay for their auto policy. 2015 WL 12942282 at *1. Without the plaintiffs' permission, the insurer added the plaintiffs' son to their policy and began debiting an increased premium amount. Id. Because the premium increase was not authorized by the plaintiffs' insurance policy or by their purchase agreement, the court held that the plaintiffs alleged a violation of Section 1693e(a). Id. at *3-4; accord O'Brien v. Landers, No. 1:10-CV-02765, 2011 WL 221865, at *2 (N.D. Ill. Jan. 24, 2011) (holding that the plaintiff alleged a violation of Section 1693e(a) where a $35 charge was not authorized by the plaintiff's gym membership agreement, which only allowed debits for monthly dues and personal services); Wendorf v. Landers, 755 F. Supp. 2d 972, 977 (N.D. Ill. 2010) (same).

For the reasons explained above, to the extent that SeaWorld continued collecting monthly payments from customer accounts after EZ Pay passes were "paid in less than 12 months" and did so by "electronic fund transfer," as that term is defined in 15 U.S.C. § 1693a(7), the Court holds that the transfers violated 15 U.S.C. § 1693e(a). Plaintiffs' motion for summary judgment as to liability on Count II is therefore **GRANTED**.

14

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiffs' Motion for Summary Judgment as to Liability (Dkt. 123) is **GRANTED**, as set forth more specifically herein, and SeaWorld's Motion for Partial Summary Judgment (Dkt. 124) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida, this 17th day of April, 2017.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**

Counsel of Record
Any Unrepresented Person