UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON HERMAN,
JOEY KRATT, and                                    CASE NO.: 8:14-cv-03028-MSS-JSS
CHRISTINA LANCASTER,

       Plaintiffs,

v.

SEAWORLD PARKS &
ENTERTAINMENT, INC.,

       Defendant.

_____/

## **MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiffs, Jason Herman, Joey Kratt, and Christina Lancaster (collectively, "Plaintiffs"), respectfully request that the Court enter an Order (1) granting final approval of the Amended Settlement Agreement (the "Settlement Agreement," "Settlement," or "Agreement") between Plaintiffs and Defendant SeaWorld Parks & Entertainment, Inc. ("Defendant" or "SeaWorld"); (2) granting Class Counsel's petition for attorneys' fees and expenses; and (3) awarding service awards to the named Plaintiffs.[1]  A copy of the Settlement Agreement is attached as Exhibit 1.  Class Counsel are of the opinion this is an excellent settlement for the Class and that the settlement is fair, reasonable, and adequate.  No Class members have objected to the Settlement, the proposed award of attorney's fees and costs, or the proposed award to the Plaintiffs.  The grounds supporting this motion are set forth in the following Memorandum.

_____

[1] A motion and memorandum providing detailed support for the requested award of attorney's fees and the service awards to the named Plaintiffs was filed on February 26, 2019.  Doc. 199.

**MEMORANDUM**

## I.     History of the litigation, settlement negotiations, and the Settlement Agreement

### A.     Introduction

This is a class action on behalf of consumers who purchased annual passes to theme parks owned by SeaWorld and paid for their passes in monthly installments through SeaWorld's "EZ Pay" system.  Plaintiffs alleged that SeaWorld's practice of automatically renewing the annual passes of its installment customers was a breach of the EZ Pay contract between SeaWorld and its annual pass customers and, as to customers who paid with debit cards, a violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.* Doc. 72.

The Plaintiffs are pleased to submit to the Court a settlement agreement that is fair, adequate, and reasonable and is the product of good faith, arm's-length negotiations between the parties.  After rigorous advocacy and negotiation, the parties have agreed on a settlement that provides an excellent result for Class members.

### B.     Case history

The history of this litigation, the process by which the parties reached the Settlement Agreement, and the issues involved in settling this matter are discussed in detail in the Affidavit of Paul Fowkes, attached as Exhibit 2, and are summarized below.

#### 1.     Litigation of this matter

This case has been vigorously litigated for over four years.  Ex. 2 ¶¶ 11-22.  The case began in December 2014 with the filing of the Complaint on behalf of Plaintiff Jason Herman. Doc. 1.  SeaWorld moved to dismiss the Complaint, Doc. 25, following which an Amended

Complaint was filed adding William Cohen[2] and Joey Kratt as named Plaintiffs.  Doc. 26.

SeaWorld filed a new motion to dismiss, Doc. 30, to which the Plaintiffs responded.  Doc. 34.

Following a hearing, Doc. 33, 38, the Court granted in part and denied in part SeaWorld's

motion to dismiss, Doc. 37.  In October 2015, Plaintiffs filed a Second Amended Class Action

Complaint that added Christina Lancaster as an additional Plaintiff.  Doc. 72.  The Second

Amended Class Complaint alleged on behalf of a Class of Florida, Texas, Virginia, and

California EZ Pay customers that SeaWorld's practice of automatically renewing the annual

passes of installment customers was a breach of contract.  Doc. 72 ¶¶ 57, 69-75.  Plaintiff Kratt

also alleged on behalf of a Subclass of EZ Pay customers who paid for their passes with debit

cards that SeaWorld's conduct violated the EFTA.  *Id.* ¶¶ 57, 76-81.

Following the filing of the Second Amended Class Complaint, SeaWorld moved to

compel arbitration of and to dismiss Plaintiff Lancaster's claim based on the "browsewrap"

form on its website.  Doc. 78.  Plaintiff Lancaster responded to the motion. Doc. 83. The Court

denied it.  Doc. 121.

On March 25, 2016, the Plaintiffs moved for class certification.  Doc. 93.  SeaWorld

responded to Plaintiffs' motion for class certification.  Doc. 99.  The Court granted Plaintiffs'

class certification motion and certified a Breach of Contract Class and an EFTA Subclass. Doc.

135 at 49-50.

Pursuant to Federal Rule of Civil Procedure 23(f), SeaWorld filed a petition in the

Eleventh Circuit Court of Appeals for leave to appeal the Court's class certification ruling,

Doc. 138, to which Plaintiffs responded, Doc. 139.  The Eleventh Circuit denied SeaWorld's

---

[2]Sadly, Mr. Cohen passed away before this litigation concluded.  Doc. 133.  His claim was therefore dismissed.  Doc. 136.

petition for leave to appeal, and also denied SeaWorld's motion for reconsideration of the denial of its petition.  Doc. 148 Ex. A; Doc. 156 Ex. 1.

Plaintiffs moved for summary judgment as to liability on both the breach of contract and the EFTA claims.  Doc. 123.  SeaWorld moved for partial summary judgment as to the breach of contract claim.  Doc. 124.  While SeaWorld's petition for leave to appeal was pending, the Court granted Plaintiffs' motion for summary judgment as to liability and denied SeaWorld's motion for partial summary judgment.  Doc. 144.  The Court held that the undisputed material facts demonstrated that SeaWorld breached the EZ Pay contract by automatically renewing its customers' annual passes and continuing to charge customers after they had made the twelve required contract payments.  *Id.* at 4-10.  The Court further held that the undisputed material facts established that SeaWorld violated the EFTA by collecting electronic funds transfers after the EZ Pay contract expired.  *Id.* at 12-14.

After the Eleventh Circuit denied its petition for leave to appeal, SeaWorld filed a notice of appeal from the Court's arbitration, class certification, and summary judgment orders. Doc. 148.  The Eleventh Circuit dismissed SeaWorld's appeal for lack of jurisdiction.  Doc. 155.

Following the conclusion of the proceedings in the appellate court, SeaWorld moved to decertify the class on the theory that the Court's entry of summary judgment as to liability in favor of the Plaintiffs before the members of the Class had been given notice and an opportunity to opt out violated the one-way intervention doctrine.  Doc. 168.  Plaintiffs responded in opposition to the motion.  Doc. 173.  The motion to decertify remained pending at the time the parties notified the Court they had reached a settlement in principle, Doc. 178, and was denied as moot.  Doc. 179.

### 2. Discovery and discovery litigation

Discovery in this case was extensive and wide-ranging. *See* Ex. 2 ¶¶ 23-32. SeaWorld moved to bifurcate class discovery, Doc. 23, which the Court denied in March 2015. Doc. 37. Plaintiffs served SeaWorld with multiple sets of interrogatories, requests to produce, and requests for admission. Ex. 2 ¶ 25. Plaintiffs took the depositions of FreedomPay's corporate representative in Pennsylvania, as well as the three different witnesses SeaWorld designated as corporate representatives, which took multiple full days to complete. *Id.* ¶ 29. Plaintiffs filed a motion to compel in order to obtain discovery regarding SeaWorld's affirmative defenses, Doc. 59, to which SeaWorld responded, Doc. 60, and Plaintiffs were granted leave to file a reply, Doc. 62, Doc. 63. Following a hearing, Doc. 67, the Court granted in part Plaintiff's motion to compel. Doc. 68. Ultimately, SeaWorld produced voluminous records from its EZ Pay database, which included thousands of unique documents from the four states at issue and a spreadsheet of hundreds of thousands of entries that Plaintiffs' counsel were required to analyze. Ex. 2 ¶ 28.

SeaWorld deposed each of the Plaintiffs, as well as Mr. Cohen's wife and Mr. Kratt's wife. Ex. 2 ¶ 30. Ms. Lancaster's deposition took place in Virginia. *Id.* SeaWorld also took the deposition of Plaintiffs' expert witness. *Id.* Although Plaintiffs responded to discovery requests from SeaWorld, SeaWorld also moved to compel discovery from Plaintiffs regarding Plaintiffs' contracts with third parties unrelated to this litigation. Doc. 101. Plaintiffs opposed the motion, Doc. 104, and following a hearing, Doc. 116, the Court denied it. Doc. 118. Discovery was concluded by the scheduled discovery deadline, Doc. 56 at 2, of July 15, 2016.

Plaintiffs filed two motions to strike proposed expert reports. In the first, Plaintiffs moved to strike the expert report of SeaWorld's proposed expert linguist regarding the

interpretation of the EZ Pay Contract, Allan Metcalf. Doc. 91. In the second, Plaintiffs moved to strike a proposed expert regarding information contained in SeaWorld's EZ Pay database, Joseph J. Egan. Doc. 92. SeaWorld opposed both motions. Doc. 96, Doc. 97. The Court granted the motion to strike Mr. Metcalf's expert report and denied the motion to strike Mr. Egan's expert report. Doc. 135. Plaintiffs also retained a banking/payment systems expert to opine on issues relating to the EFTA subclass.

### 3.      Settlement negotiations

The parties held three in-person mediations during the course of this case. Ex. 2 ¶ 33. The first took place in May 2015 and was unsuccessful. *Id.* ¶ 34. A second mediation took place in May 2016 and was also unsuccessful. *Id.* ¶ 36. In April 2018, the parties held a third mediation. *Id.* ¶ 38. The parties did not reach a settlement on the date of the third mediation. *Id.* ¶ 39. At the conclusion of that day, however, the mediator made a Mediator's Proposal and gave the parties two days to accept it. *Id.* ¶ 39. Within the two days given by the mediator, both parties agreed to the Mediator's Proposal and reached an agreement in principle. *Id.* ¶ 40. The parties worked over the following several months to prepare settlement documents and draft a proposed notice to the Class. *Id.* ¶ 42.

In June 2018, Plaintiffs moved for preliminary approval of the settlement agreement reached following the mediation. Doc. 182. In response to concerns the Court raised about the original settlement agreement, the parties entered into the Amended Settlement Agreement for which approval is sought in this motion. Doc. 194. The terms of the Settlement Agreement are discussed in more detail below. The Court granted preliminary approval of the Settlement Agreement on December 14, 2018. Doc. 195 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the deadline for Class members to object to or opt out of

the Settlement was March 19, 2019.  *Id.*  The Final Approval hearing is set on April 18, 2019.

Doc. 197.

The Settlement was thus reached after thorough investigation of the facts and examination of the law, as well an evaluation of the strengths and weaknesses of each parties' positions.  Ex. 2 ¶ 41.  Settlement negotiations were arm's length, not collusive, and resulted from years of hard-fought litigation.  *Id.*  ¶¶ 41, 47.  The Settlement Agreement itself went through multiple revisions before both parties were satisfied with it.  *Id.* ¶ 47.

**B.     The Settlement Agreement**

It is the opinion of Plaintiffs and Class Counsel that the Settlement Agreement is fair, reasonable and adequate.  Ex. 2 ¶ 45.  As is described in more detail below, the Settlement Agreement provides significant relief to the Class, under which every Class member will receive at least $31.75 for each EZ Pay pass that class member purchased.  *Id.*  Class members who made their EZ Pay payments with a debit card are also members of the EFTA Subclass and will additionally receive a pro rata share of a $500,000 fund.  *Id.*  Class members are not required to do anything to receive their monetary compensation by way of a check mailed to the class member; however, those class members who wish to may choose to receive a monetary credit to a SeaWorld park.  *Id.*

The Settlement Agreement defines the Class and Subclass consistently with the Court's Order granting class certification.  *Compare* Doc. 135 at 49-50 *with* Ex. 1 ¶¶ 1.14; 1.18.  It provides significant benefits to the Class.  Specifically:

- SeaWorld is responsible for the costs of providing notice to the class and the costs of claims administration, including the hiring of a Settlement Administrator.  Ex. 1 ¶¶ 1.17, 2.4.

- SeaWorld will pay $11.5 million (the "Settlement Amount") into a common fund (the "Common Fund"). Ex. 1 ¶ 2.1.

- Of the $11.5 million Common Fund, a $500,000 EFTA Subclass Fund will be distributed pro rata to each EFTA Subclass member. *Id.* ¶¶ 1.3, 2.2. Any funds remaining in the EFTA Subclass Fund after distribution to the members of the EFTA Subclass is complete will be paid to the National Fish and Wildlife Foundation, a non-profit organization devoted to conserving marine life. *Id.* ¶ 2.3(e).

- Attorney's fees and costs will be paid to Class Counsel from the Common Fund in a reasonable amount to be approved by the Court. *Id.* ¶ 2.7.

- Service awards will be paid from the Common Fund to the named Plaintiffs in a reasonable amount to be approved by the Court. *Id.* ¶ 2.6.

- The funds remaining in the Common Fund following the deduction of attorney's fees and costs, service awards to the named plaintiffs, and the EFTA Subclass Fund will be distributed pro rata to each Class Member based on the number of passes the Class Member purchased (the "Per Pass Payment"). *Id.* ¶ 2.3. SeaWorld estimates that the amount of the Per Pass Payment will be at least $31.75, which will be multiplied by the number of passes each Class Member purchased.

The Settlement eliminates the inherent risk the parties would have to take, and the high cost in time and money that the parties would have to expend, if the litigation were to go forward. SeaWorld has denied the claims and does not admit liability or misconduct. *See* Ex. 1 at 1. As a result of this Settlement, SeaWorld will be released from potential claims by Plaintiffs and the Class that accrued through the date of final approval of the Settlement. *See id.* ¶¶ 1.21, 4.2. The Plaintiff and the Class avoid the risk that Class members might not obtain

a full recovery or might not recover anything if this case were litigated to a conclusion, or might face lengthy delays before being able to benefit from any recovery.

In sum, the parties have agreed to a Settlement that both sides believe to be mutually beneficial and fair, and the parties seek final judicial approval of its terms.

### D.  Notice to the Class

The parties agreed to and the Court approved a detailed Class Notice that informed Class Members of: (a) the Class definition; (b) the terms of the proposed Settlement; (c) the relief the Settlement provides; (d) the options available to class members and how to select one of them; (e) the proposed award of attorney's fees and expenses to Class Counsel; (f) the proposed service awards to the named Plaintiffs; (g) Class Members' right to object to or to opt out of the proposed Settlement; (h) the time and date of the Fairness Hearing; and (i) Class Members' right to appear at the Fairness Hearing in favor of or in opposition to the proposed Settlement.[3]  The Notice was sent by mail to all Class Members at the address Defendant had in its system, and resent to an updated address if returned to the Settlement Administrator.  Ex. 1 ¶ 3.2(d).  Compliance with the Notice Plan is detailed in the Declaration of the Settlement Administrator, attached as Exhibit 3.  It reflects that the Notice was sent by First Class Mail to 131,757 Class members.  Ex. 3 ¶ 5.  In addition, pursuant to the Settlement Agreement, Ex. 1 ¶ 3.2(c), the Settlement Administrator operated a website with information regarding the case and the Settlement.[4]  Ex. 3 ¶ 3.  The Settlement Administrator also maintained a toll-free telephone line to address inquiries from Class members regarding the Settlement.  *Id.* ¶ 4.

---

[3] The Class Notice in the final form sent to Class members is available at http://www.ezpaybillingsettlement.com/media/1852441/v7_sah_notice_011419.pdf.

[4] The website may be found at http://www.ezpaybillingsettlement.com/.

Information regarding the Settlement was also the subject of press coverage.[5]

### E.     Opt-outs and objections

Approximately 131,757 class members were identified and had copies of the Notice mailed to them.  Ex. 3 ¶ 5.  The Notice informed members of the Class that they had until March 19, 2019, to opt out of or object to the Settlement.  *Id.* ¶ 8, 9, Ex. A at 2.  A total of six (6) class members – or roughly 00.0045% of the Class – timely requested exclusion from the Settlement.  *Id.* ¶ 8.  No objections to the Settlement were submitted.  *Id.* ¶ 9.  Approximately 34,286 notices were returned to the Settlement Administrator as undeliverable.  *Id.* ¶ 7.  The Settlement Administrator performed a skip trace and was able to re-mail 10,755 Notices.  *Id.* ¶ 7.  Approximately, 719 notices were returned to the Settlement Administrator with forwarding addresses and were re-mailed by the Settlement Administrator.[6]  *Id.* ¶ 6.

---

[5] *See, e.g.* "SeaWorld Annual Passholders Could Get $11.5 Million In Refunds From Class Action Lawsuit," WSVN 7 News Miami (July 18, 2018), *available at* https://wsvn.com/entertainment/seaworld-annual-passholders-could-get-11-5-million-in-refunds-from-class-action-lawsuit/; "Some SeaWorld Pass Holders Could Receive Refunds In $11.5 Million Class-Action Settlement," WOFL FOX 35 Tampa (July 3, 2018), http://www.fox13news.com/news/florida-news/some-seaworld-pass-holders-could-receive-refunds-in-115-million-class-action-settlement; Gabrielle Russon, "Some SeaWorld Pass Holders Could Receive Refunds In $11.5 Million Class-Action Settlement," Orlando Sentinel (July 3, 2018), available at https://www.orlandosentinel.com/business/tourism/os-bz-seaworld-annual-pass-settlement-20180703-story.html.

[6] Under Fed.R.Civ.P. 23(c), the Court must direct the best notice that is practicable under the circumstances. However, Rule 23 does not require that each and every class member receive actual notice.  See generally, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317–18 (1950).  In cases where class members names and last known addresses are available, direct notice by mail is generally considered the best notice practicable. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175 (1974).  Courts have noted that the "average" undeliverable rate in direct mail class actions is between 10-15%, and that rates above 20% are "not by any means extraordinary." In re Ikon Office Solutions, Inc. Securities Litigation, 209 F.R.D. 94, 101 (E.D. Pa. 2002) (finding mailed notice adequate where approximately 21.4% of the notices were returned undeliverable; see also Grunin v. International House of Pancakes, 513 F.2d 114,

II.     **The Settlement satisfies the standards for judicial approval of class action settlements.**

The Court should approve the Settlement Agreement.   The Settlement provides substantial benefits to the Class and is fair, reasonable, and adequate in light of the relevant facts, the applicable law, and the potential value of the settlement to the Class.

A.     **The legal standard for final approval of a settlement**

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements, but does not set out standards for such approval.   *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988).   Rather, the approval of a proposed class action settlement is within the discretion of the trial court.   *Bennett,* 737 F.2d at 986.   In exercising its discretion, the Court should review a proposed settlement in light of the "strong judicial policy favoring settlement as well as … the realization that compromise is the essence of settlement."   *Dikeman v. Progressive Express Ins. Co.*, 312 Fed. Appx. 168, 171 (11th Cir. 2008); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).   This is especially true in class action cases given their uncertainty, difficulties in proof, and length.   *Cotton*, 559 F.2d at 1331; *Behrens*, 118 F.R.D. at 538.   Furthermore, the settlement of complex cases conserves scarce judicial resources and resolves disputes more quickly.   *Cotton*, 559 F.2d at 1331; *Behrens*, 118 F.R.D. at 538; *see also In re United States Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation . . . can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while

---

121–22 (8th Cir.1975) (approving notice procedure where 33% of class members not reached by mailing).

rendering meaningful relief increasingly elusive.").

While the Court should carefully review the settlement, the Court may not try the case on the merits. *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Cotton*, 559 F.2d at 1330; *Behrens*, 118 F.R.D. at 539. In the absence of fraud, the Court is encouraged to rely on the judgment of experienced counsel and "should be hesitant to substitute [its] own judgment for that of counsel." *In re Smith*, 926 F.2d at 1028; *Behrens*, 118 F.R.D. at 539 (citation omitted). The Court is only authorized to grant or deny final approval and may not alter the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986).

The "cardinal rule" in approving a settlement is that the trial court must find that the settlement is not be "the product of collusion between the parties" and is "fair, adequate and reasonable." *Bennett*, 737 F.2d at 986; *Cotton,* 559 F.2d at 1330; *Strube*, 226 F.R.D. at 697. The Eleventh Circuit has instructed that when determining whether a settlement is fair, adequate and reasonable, the district court should consider the following factors:

(1)     the likelihood of success at trial;

(2)     the range of possible recovery;

(3)     the range of possible recovery at which a settlement is fair, adequate and reasonable;

(4)     the anticipated complexity, expense and duration of litigation;

(5)     the opposition to the settlement; and

(6)     the stage of proceedings at which the settlement was achieved.

*Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011). An analysis of these factors weighs in favor of approval of the Settlement.

**B.      The Settlement meets the criteria for final approval.**

**1.      There was no fraud or collusion among the parties or their attorneys.**

The Settlement was reached through non-collusive, arms-length negotiations.  The parties litigated the case vigorously for more than four years and participated in three failed mediations before eventually reaching an agreement.  Class Counsel zealously pursued the interests of the Class throughout this litigation.  Class Counsel have attested that the settlement negotiations were not collusive.  Ex. 2 ¶¶ 41, 47.  The April 18, 2018, mediation that resulted in the settlement in this case took place with the assistance of mediator Gary McGowan, Esquire.  *Id.* ¶ 38.  While a settlement was not reached on that date, the mediation concluded with a Mediator's Proposal provided to both parties that both sides ultimately accepted, resulting in a settlement in principle.  *Id.*  ¶¶ 39, 40.  Over the ensuing months, the parties prepared the Settlement Agreement.  *Id.* ¶ 42.  There was no collusion and the Settlement negotiations were arms-length and conducted in good faith.

**2.      The Settlement is Fair, Adequate, and Reasonable.**

**a.      While Plaintiffs may be likely to succeed on the merits, there are significant risks, making settlement preferable.**

The most important factor the Court must consider in assessing the fairness and adequacy of the settlement is the likelihood and extent of any recovery absent a settlement.  *In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297, 314 (N.D. Ga. 1993).  The Court, however, need not reach any ultimate conclusions on unsettled issues of law and fact underlying the dispute and should defer to counsel's judgment in the absence of fraud or collusion.  *Id.* at 315.  While the Court must consider the probability of Plaintiff's success on

the merits, it must also realize that compromise is the essence of settlement and that the ultimate purpose of settlement is to avoid such final adjudications. *Bennett*, 737 F.2d at 986.

Class Counsel have investigated the facts and applicable law regarding the Class's claims and the Defendants' potential defenses and have concluded that the proposed Settlement is fair, reasonable, and adequate in light of the risks confronting Plaintiff in this litigation. Ex. 2 ¶¶ 48. While Class Counsel believe the likelihood of Plaintiffs' success on the merits is high, there are risks should the case go to trial. Although Class Counsel believe that the case is strong and the Class's claims are meritorious, the Defendants dispute their liability and deny wrongdoing, contend that Plaintiffs' case is meritless, and prior to the Settlement had moved to decertify the class.

Further, the Defendant also indicated it would be pursuing several affirmative defenses in an effort to reduce the amount of damages available to the Class. SeaWorld had also attempted to appeal the Court's summary judgment order, class certification order, and order denying its motion to compel arbitration. *SeaWorld Parks & Entertainment, Inc. v. Herman*, Case No. 17-12223-D (11th Cir.). While SeaWorld's appeal was dismissed based on lack of jurisdiction, Doc. 155, Plaintiffs had no doubt that if this case was not resolved, Defendant would again seek to pursue those issues on appeal, along with any issues that arose from the litigation of its motion to decertify the class or at trial. In short, at the time the case was settled, there was appreciable risk to Plaintiffs and the Class that Defendant could prevail in part or in whole in this Court or on appeal.

In agreeing to the Settlement, Class Counsel took into account the relative strengths of Plaintiff's case on the merits, the potential difficulties in proving the amount of damages at trial, the possible defenses Defendant would have raised in an attempt to limit damages, and

the possibility of reversal on appeal of class certification or on the merits.  Ex. 2 ¶ 48.  Class

Counsel recognized that several hurdles in the trial court and the appellate court would have to

be surmounted to obtain a recovery for the Class.  *Id.*  Not only would this potential litigation

and further appeals have an uncertain outcome, but it would also have further delayed the

litigation and any recovery to the Class.  The longer the delay before relief is provided to the

Class, the more likely it will be that the addresses available for Class members will be outdated,

resulting in fewer Class members actually receiving compensation.

In sum, given the real risks inherent in litigation of a class action case, as well as the

delays that such litigation would entail, this Settlement represents a fair, adequate, and

reasonable compromise.

> **b.      The Settlement falls within the range of possible recovery at**
> **which it is fair, adequate and reasonable.**

"The second and third considerations" the Court must consider – "the range of possible

recovery" and "the point on or below the range of possible recovery at which a settlement is

fair, adequate and reasonable" – "are easily combined." *Behrens*, 118 F.R.D. at 539, 541. The

court must consider the range of possible damages the Class could recover at trial and

determine whether the settlement falls within the range that is fair to the class.  *In re Domestic*

*Air Transp.*, 148 F.R.D. at 319.  This Settlement provides for relief to the Class that is well

within the range of possible recovery that is fair, adequate, and reasonable.

That is, the maximum damages available on the breach of contract claim was

approximately $17.3 million.  Doc. 182 at 15.  Coupled with the total maximum EFTA

damages of $500,000, this would result in a realistic "best case" scenarios for the Class of

damages totaling approximately $17.8 million.  As explained above, Class Counsel took into

account litigation risk in this case that could have resulted in SeaWorld either limiting the recovery to the Class or even prevailing in this Court or on appeal.  For instance, SeaWorld argued that members of the class had failed to mitigate their damages by not taking steps to stop the recurring monthly charges SeaWorld collected from them.  Doc. 99 at 37.  SeaWorld also argued some class members would be subject to setoff defenses for various reasons and that some class members settled their potential claims prior to this litigation.  *Id.* at 37-38. SeaWorld had moved to decertify the Class, and, as discussed above, had already sought to appeal the Court's certification and summary judgment orders, and would likely have also appealed any final judgment in favor of Plaintiffs and the Class.  Accordingly, while the possible recovery in this case could be $17.8 million, it could also have been significantly less, or even no recovery.

Within that range, the $11.5 million recovery obtained on behalf of the Class represents approximately two-thirds of the "best case" potential recovery.  As discussed in the motion for attorney's fees, Doc. 199 at 10, results far below this range have been described as representing an "excellent" result for a class.  *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1256 (S.D. Fla. 2016) (fund representing "about 20% of the maximum damages that could have been recovered" was an "excellent result" and "an unqualified success"); *In re: Checking Account Overdraft Litig.*, 1:09-MD-02036-JLK, 2013 WL 11319244, at *1 (S.D. Fla. Aug. 2, 2013) (common fund "representing approximately fifty-one (51%) of the most probable recoverable damages … constitutes an excellent result").

Further, members of the Class were not required to submit a claim form, or take any action, to obtain their recovery.  Class members who did nothing will be mailed at the most recent address SeaWorld has for them a check in the amount of the Per Pass Payment,

multiplied by the number of passes they held.  Ex. 1 ¶ 2.3(a).  If a check is returned or not delivered, the settlement administrator will attempt to contact the Class member by email to request an updated address.  *Id.* ¶ 2.3(d).  Any unclaimed funds will remain in the Common Fund for a period of one-hundred fifty (150) days.  *Id.* ¶ 2.3(e).  After that time, any remaining portion of the EFTA Settlement Amount will be donated to the National Fish and Wildlife Foundation.  *Id.*  The National Fish and Wildlife Foundation is a nonprofit organization independent from SeaWorld, and its mission of conserving and renewing marine life, *id.*, is both laudable and in line with the likely interests of class members.  Only those funds left unclaimed from the non-EFTA Settlement portion of the Common Fund will be returned to SeaWorld.  *Id.*

Further, Class members were given multiple options under this Settlement.  While only a small number of Class members still have active passes, Ex. 4, Class members in that category had the option of retaining their passes and continuing to be billed for them at the monthly rate they have historically been charged (which is lower than the current monthly rate).  Those Class members could alternatively return the option form, as over 4,600 Class members did, Ex. 3 ¶ 10, and terminate their passes.  Ex. 1 ¶ 3.2(e).  Additionally, Class members who wished to retain their passes could choose to receive a credit rather than their payment in the form of a check if they made that selection on the option form.  *Id.* Significantly, if any of the small number of Class members who continue to be charged following this process believe such charges to be improper, the release resulting from the Settlement extends only until the date of final approval.  *Id.* ¶¶ 1.21, 4.2.

As a result, the benefit to the Class from this Settlement is well within the reasonable range of recovery, supporting final approval of the Settlement.

### c. The complexity, expense, and duration of litigation favor settlement.

The expense and likely duration of this case support settlement. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). Plaintiffs initially brought this case almost four and a half years ago, after having researched and investigated the case before filing it. Ex. 2 ¶ 47. Class Counsel expected that, absent a settlement, continuing to litigate this case would have involved resolution of SeaWorld's motion to decertify the Class, litigation regarding the amount of damages and any potential offsets to damages in advance of or at a trial, and an appeal. Ex. 2 ¶ 48. Given the motion to decertify that was pending at the time of settlement, the need to provide the Class with notice and an opportunity to opt out before trial, additional discovery that would have been required, the anticipated pretrial motions, the trial, and the anticipated appeal, it would reasonably have been expected that in the absence of a settlement, this case could have continued for at least another year and a half to two years absent a settlement, and perhaps even longer. Such continued litigation would have consumed considerable time and resources on the part of counsel and the court system, as well as delaying relief to the Class. Under these circumstances, the immediate benefit conferred by the Settlement weighs in favor of approval.

### d. The Class's reaction to the Settlement and the approval of Class Counsel weigh in favor of approval.

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Aramburu v. Healthcare Fin.*

*Servs., Inc,* 2009 WL 1086938, at *4 (E.D.N.Y. April 22, 2009).  "Generally, if the class members do not oppose the class settlement, the court is justified in concluding that they consider it fair and reasonable."  *Lachance v. Harrington,* 965 F. Supp. 630, 645 (E.D. Pa. 1997); *see also Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 114 (E.D. Pa. 2005) ("Silence from the class is generally presumed to indicate agreement with the settlement terms.").

That no objections to the Settlement have been received weighs strongly in favor of final approval.  The Notice provided Class Members with specific instructions and deadlines regarding how to object to the Settlement if they felt it was appropriate to do so.  There are over 130,000 Class members.  Ex. 3 ¶ 2.  No objections whatsoever were submitted.  *Id.* ¶ 9.  Only six class members have opted out of the Settlement. Ex. 3 at ¶ 8.

The Court may also consider the fact that Class Counsel, who are, as the Court has determined, qualified and experienced counsel, *see* Doc. 135 at 38, believe the Settlement is fair, reasonable, and adequate.  *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (SD Fla. 2007) (court "properly considers the judgment of experienced counsel when asked to approve a class action settlement.").

The lack of any opposition from the Class and favorable opinion of Class Counsel strongly support approval of the Settlement.

          e.       **The stage of the proceedings provides the parties and the Court with ample basis to evaluate the Settlement.**

The Settlement is the product of significant litigation, including discovery by both parties, a motion to dismiss, a motion for class certification, summary judgment motions, and Defendant's petition for leave to appeal the class certification order.  Where the parties arrive at a settlement only after the parties have engaged in discovery and litigation of the matter, this is a stage where

the parties had a clear view of the strengths and weaknesses of their cases, thus favoring settlement. *Orloff v. Syndicated Office Sys., Inc.*, 2004 WL 870691, at *6 (E.D. Pa. Apr. 22, 2004). Similarly, the motion practice in this case has provided this Court with the opportunity to familiarize itself with the legal and factual issues presented in this case. The Court is therefore in an excellent, fully informed position to determine the fairness of the Settlement. The quantity of litigation and the seriousness with which the parties conducted the settlement negotiations are also a factor favoring approval of this Settlement. Moreover, the attorneys representing the parties to the Settlement are seasoned trial attorneys, with extensive experience in this type of litigation.

Class Counsel have agreed to this Settlement on the basis of a well-informed and clear understanding of the value of the claims being compromised and the benefits being obtained. In sum, given the advanced stage of the proceedings in this case and the familiarity of the Court and Class Counsel with the factual and legal issues underlying the case, the Settlement should be approved.

### C.      Conclusion

For these reasons, the Settlement readily meets the judicial standard for approval of settlement agreements and should be approved.

### III.     The petition for attorney's fees and costs and request for service awards to the named Plaintiffs should be granted.

Additionally, for the reasons discussed in Plaintiffs' motion for attorneys' fees and costs and for service awards to the class representatives, the Court should order the requested award of attorney's fees and costs of twenty-five percent (25%) of the Settlement Amount, or $2,875,000, order reimbursement of the reasonable litigation costs of Class Counsel related to their representation of the Class in the total amount of $34,037.87 and approve service awards

to the named Plaintiffs for their service as class representatives in the amount of $10,000 each. Doc. 199.  The motion for attorneys' fees and costs was made available to Class members on the website set up by the settlement administrator to provide information regarding the settlement, Ex. 3 ¶ 3, in advance of the March 19 deadline for Class members to object to the Settlement.  No objections to the requested award of attorneys' fees and costs or the service awards to the class representatives were received.

## CONCLUSION

For these reasons, it is respectfully requested that the Court enter an Order approving the Settlement in this case, awarding Class Counsel attorney's fees of $2,875,000, representing twenty-five percent (25%) of the Settlement Amount, ordering reimbursement of Class Counsel's reasonable litigation costs in the total amount of $34,037.87, and approving a service award to the named Plaintiffs in the amount of $10,000 each.

Respectfully submitted,

/s/ *Katherine Earle Yanes*
Katherine Earle Yanes (FBN 0159727)
kyanes@kmf-law.com
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, Florida 33601-3396
Telephone: (813) 229-1118
Facsimile:  (813) 221-6750
*Co-Counsel for Plaintiffs*

/s/ *Paul R. Fowkes*
Paul R. Fowkes (FBN 723886)
paul@fhlawpa.com
Ryan C. Hasanbasic (FBN 44119)
F&H LAW GROUP, P.A.
1807 Short Branch Drive, Ste. 101
Trinity, Florida 34655
Telephone: (813) 221-0500
Facsimile: (727) 943-3203
*Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to:

Colin C. Deihl
CDeihl@polsinelli.com

Christopher T. Hill
chill@hrkmlaw.com

/s/ *Katherine Earle Yanes*
Katherine Earle Yanes